ISAAC HAAS *et al. v.* CHARLES STERNBACH *et al.*

and

LEHMAN SPIEGELBERG *et al. v.* CHARLES STERNBACH *et al.*

*Filed at Ottawa October 29, 1894—Rehearing denied June 15, 1895.*

1. EVIDENCE—*mortgage· of individual property to secure firm debt—fraud.* The fact that premises mortgaged for a firm debt were the individual property of one member of the firm, is entitled to consideration on the question of fraud in keeping the mortgage unrecorded.

2. MORTGAGE—*effect of omission to record at request of mortgagor.* Mere omission to record a mortgage, though caused by request of the mortgagor, does not make the mortgage fraudulent as to subsequent creditors or purchasers with notice of its existence.

3. SAME—*given in lieu of prior invalid mortgage.* A mortgage executed for the purpose of giving security in lieu of a prior mortgage supposed to be invalid, is invalid if the prior mortgage is valid.

4. NOTICE—*to attorney binds those taking benefit of his act.* Knowledge of a mortgage, possessed by an attorney employed by the mortgagor to make confession of judgments to other creditors with the express purpose of giving them a preference over the mortgage, may be imputed to such judgment creditors who take the benefits of his act, so as to charge them with notice of the mortgage.

*Sternbach* v. *Leopold et al.* 50 Ill. App. 476, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county ; the Hon. O. H. HORTON, Judge, presiding.

JAMES E. MUNROE, for appellants Isaac Haas, Samuel Cole and Carrie B. Leopold:

A mortgage takes effect and becomes a lien, as to third parties having no notice, from the date of record, and a judgment becomes a lien from the time of its rendition. These propositions are settled by the statutes of Illinois. Rev. Stat. chap. 30, secs. 28, 30; chap. 77, sec. 1.

As Sternbach and his co-complainants claim that Haas, Cole and Carrie B. Leopold had notice of the Sternbach mortgage, the burden is upon Sternbach and his co-com-

plainants to make proof of such notice. *Ryder* v. *Bush*, 102 Ill. 338; *Huebsch* v. *Scheel*, 81 id. 281; 1 Jones on Mortgages, sec. 580.

Proof of notice, to supply the place of registry, must be clear and undoubted, and such as will affect the second grantee, whose deed is first recorded, with the charge of fraud. 1 Jones on Mortgages, sec. 580.

A mortgagee is a purchaser, within the meaning of our recording laws ; and this is true when the mortgage is made to secure an antecedent debt. Rev. Stat. chap. 30, secs. 28, 30; *Partridge* v. *Smith*, 2 Biss. 183; *McIntire* v. *Yates*, 104 Ill. 491; *Bank* v. *Cheeney*, 87 id. 602; *Doolittle* v. *Cook*, 75 id. 359.

The time when notice must be brought home to the junior grantee, whose instrument is first recorded, in order to postpone his rights, is when his instrument is delivered, and not when it is recorded. *Huebsch* v. *Scheel*, 81 Ill. 281; *Worden* v. *Williams*, 24 id. 73; *Truesdale* v. *Ford*, 37 id. 215; *Rogers* v. *Wiley*, 14 id. 65; *Rupert* v. *Mark*, 15 id. 540; *Constant* v. *Rochester*, 133 N. Y. 640; *Elsey* v. *Lutyens*, 8 Hare's Ch. 159; *Essex* v. *Baugh*, 1 Y. & C. 620; 2 White & Tudor's Leading Cases in Eq. (4th ed.) 48; 1 Jones on Mortgages, secs. 570, 581.

The notice to postpone the second grantee, whose instrument is first recorded, must be prior to the purchase by the second grantee. 1 Jones on Mortgages, sec. 581; *Morrison* v. *Kelly*, 22 Ill. 624.

An agent or attorney employed to do a merely ministerial act, such as to draw, or procure the execution of, or place on record, a deed or mortgage, is not such an agent as that notice to him of a prior incumbrance will be regarded as notice thereof to the principal. Webb on Record of Title, sec. 240; *Wyllie* v. *Pollen*, 32 L. J. Ch. 782; *Astor* v. *Wells*, 4 Wheat. 478; *Anketel* v. *Converse*, 17 Ohio St. 11; *Trintor* v. *Pothen*, 46 Minn. 298; 1 Jones on Mortgages, sec. 587; Ewell's Evans on Agency, 229; *Doyle* v. *Teas*, 4 Scam. 250.

A solicitor whose notice affects his client must be a solicitor "for the confidential purpose of advising," otherwise there is no duty on his part to communicate his knowledge to his client, and the doctrine of implied notice has no application. *Wyllie* v. *Pollen*, 32 L. J. Ch. 782.

Upon the facts in the record neither Henry Leopold nor the firm of Tenney, Church & Coffeen can be held to have so represented Haas, Cole or Carrie B. Leopold as to make his or their knowledge of the Sternbach mortgage notice to the three subsequent mortgagees. *Astor* v. *Wells*, 4 Wheat. 466.

Where the mortgagor prepared and recorded for the mortgagee a mortgage, it was held that the knowledge of the mortgagor of a prior unrecorded mortgage, made by himself to a third party, was not to be imputed or charged to the mortgagee. *Hoppock* v. *Johnson*, 14 Wis. 303.

The act of Henry Leopold in preparing and delivering, through his own attorneys, the Haas, Cole and Carrie B. Leopold mortgages, did not make Henry Leopold, or his attorneys, the agent or agents of the mortgagees. *Headley* v. *Shaw*, 39 Ill. 354; *Buckmaster* v. *Grundy*, 1 Scam. 310; *Hunter* v. *Belgen*, 39 Ill. 368; *Boston* v. *Clifford*, 68 id. 67; *Corbus* v. *Teed*, 69 id. 205.

Knowledge acquired by an attorney in the professional business of one client cannot be imputed to another client of the attorney acting in a subsequent transaction. *Harrington* v. *McCullen*, 73 Ill. 476; *McCormick* v. *Wheeler*, 36 id. 116; *Campbell* v. *Benjamin*, 69 id. 244; *Snyder* v. *Partridge*, 138 id. 174; Wade on Notice, sec. 692; Mechem on Agency, sec. 720.

The Sternbach mortgage, having been delivered under an agreement that it should not be recorded, must be held to be fraudulent as to those creditors who became such after the execution of the mortgage and before it was recorded, even if they acquired their liens with notice of the Sternbach mortgage. *Hildeburn* v. *Brown*, 17 B. Mon. 779; *Bank* v. *Doran*, 109 Mo. 40; *Paper Co.* v. *Guenther*, 67

Wis. 101; *Sanger* v. *Guenther*, 73 id. 354; *Hilliard* v. *Cagle*, 46 Miss. 309; *Gill* v. *Griffith*, 2 Md. Ch. 270; *Bank* v. *Newton*, 13 Col. 245; *Walton* v. *Bank*, 13 id. 265; Wait on Fraud. Con. sec. 234; *Blennerhasset* v. *Sherman*, 105 U. S. 100.

Sternbach must be held to have intentionally permitted Cole and Haas and others to advance money upon the credit of Henry Leopold and his firm under the mistaken belief that the lands in question were unincumbered, and the Sternbach mortgage is fraudulent and void as to them. 2 Bigelow on Fraud, 375-387; *Blum* v. *McBride*, 69 Texas, 60; *Freeman* v. *Pope*, L. R. 5 Ch. 538; *Neslin* v. *Wells*, 104 U. S. 428; *Sanger* v. *Guenther*, 73 Wis. 357.

S. P. SHOPE, and D. P. PHELPS, also for appellants Isaac Haas *et al.*

CRATTY BROS. & JARVIS, for appellants Lehman Spiegelberg, Louis Mayer, William Goodheart and Carrie Spiegelberg.

ISHAM, LINCOLN & BEALE, for appellees :

Apart from the operation of the recording statute, and in the absence of fraud in fact or fraudulent intent, the oldest lien prevails. 1 Jones on Mortgages, sec. 607; *Noakes* v. *Martin*, 15 Ill. 118 ; *Deininger* v. *McConnell*, 41 id. 227; *Cabeen* v. *Breckenridge*, 48 id. 91; *Schultze* v. *Houfes*, 96 id. 335.

The junior grantee must, without notice, get his deed on record first, otherwise it will not prevail over the senior deed, although he may have parted with his consideration and obtained his deed in good faith. *Robinson* v. *Rowan*, 2 Scam. 499 ; *McConnell* v. *Reed*, 4 id. 117; *Doyle* v. *Teas*, id. 202 ; *Worden* v. *Williams*, 24 Ill. 67; *Williams* v. *Tatnall*, 29 id. 553 ; *Brookfield* v. *Goodrich*, 32 id. 363 ; *Cabeen* v. *Breckenridge*, 48 id. 91.

A creditor is held to be "one who, without actual or constructive notice of a prior conveyance or incumbrance, institutes such proceedings or takes such steps as effect

a lien on the land before the recording of such convey-
ance or incumbrance, whether the debt be prior or sub-
sequent" to such conveyance or incumbrance. *Martin* v.
*Dryden,* 1 Gilm. 187; *Crawford* v. *Logan,* 97 Ill. 396; *Buggy
Co.* v. *Graves,* 108 id. 459; *Thomas* v. *Burnett,* 128 id. 37.

If the prior incumbrancer is merely deprived of his
legal advantage and thrown back upon his equity, the
prior equity must prevail unless the junior equity be
united with the legal title acquired without notice of the
equity. *Morton* v. *Robards,* 4 Dana, 258; *Baldwin* v. *Crow,*
86 Ky. 679; *Cowan* v. *Gill,* 11 Lea, 674; *King* v. *Fraser,* 23
S. C. 543.

Withholding a conveyance or mortgage from record
does not operate to defeat or postpone it as against gen-
eral creditors whose claims arose without notice of it.
Such withholding is not a fraud *per se* or a fraud in law.
*Field* v. *Ridgely,* 116 Ill. 424; *Paper Co.* v. *Lithographing Co.*
35 Ill. App. 500; *Stewart* v. *Hopkins,* 30 Ohio St. 502; *Pike*
v. *Armstead,* 1 Dev. Eq. 110; *Magovern* v. *Richard,* 27 S. C.
272; *Lumber Co.* v. *Stonewall Ins. Co.* 77 Ala. 184; *Thouron*
v. *Pearson,* 29 N. J. Eq. 487; *Scott* v. *Alford,* 53 Texas, 82;
*Sawyer* v. *Turpin,* 91 U. S. 114; *Scott* v. *McMurran,* 7 Blackf.
284; *Folsom* v. *Clemence,* 111 Mass. 273.

The liens of the defendants, having all been acquired
with notice of the Sternbach mortgage, stand upon pre-
cisely the same footing as if that mortgage had been
placed upon record before they were acquired. *Robinson*
v. *Rowan,* 2 Scam. 499; *McConnell* v. *Reed,* 4 id. 117; *Cabeen*
v. *Breckenridge,* 48 Ill. 91; *Williams* v. *Tatnall,* 29 id. 553.

S. H. WRIGHT, for appellees William Sulzbacher,
Henry Gitterman and Joseph Sulzbacher.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of
the court:

This litigation arose upon a bill to foreclose a real
estate mortgage, filed by appellees, against appellants
and others, in the circuit court of Cook county. The

controversy between the parties to this record is as to which is entitled to the prior lien upon the premises described in the mortgage sought to be foreclosed. The facts material to a determination of that question are substantially as follows:

On and prior to the eighth of February, 1890, Leopold Bros. & Co. were engaged in the business of manufacturing and selling clothing in the city of Chicago. For many years H. Herman Sternbach & Co. of New York carried on the business of importing and selling goods, and the two firms had had large dealings with each other. Some months prior to the date named, M. L. Leopold, a member of the Chicago firm, residing in New York and managing the business of his firm in that city, and who was on intimate and friendly terms with Charles Sternbach, the managing member of H. Herman Sternbach & Co., died, and thereupon Henry Leopold, the senior member of Leopold Bros. & Co., applied to Charles Sternbach for financial aid for his firm, by way of loans and advancements of money. The result of that application and subsequent negotiations was, that on said eighth of February Henry Leopold and wife executed and delivered to Charles Sternbach the mortgage in suit, to secure the payment of $60,000 then and thereafter to be loaned and procured by the firm of H. Herman Sternbach & Co. to and for the firm of Leopold Bros. & Co. The mortgage conveyed a certain lot 4 and a certain block 7 in the city of Chicago. At the time of its execution there was an understanding between the parties (the evidence of which will be noticed later) that this mortgage should not then be placed upon record, and it was not recorded until the fifth day of November, 1890. In the meantime the mortgagors, Henry Leopold and wife, conveyed the same lot and block as follows: Lot 4, by trust deed to Francis B. Peabody, October 28, 1890, recorded the next day, to secure a debt of $15,000; the undivided one-fourth of block 7, by quit-claim deed to Lehman Spiegelberg,

October 30, 1890, recorded the same day; (these two conveyances are not in question;) lot 4, by mortgage to Samuel Cole, to secure a debt of $13,000; the same to Isaac Haas, to secure a debt of $10,000; the undivided three-fourths of block 7, by mortgage to Lehman Spiegelberg, to secure a debt of $4500; the same by mortgage to Carrie B. Leopold, to secure a debt of $7000; the same by mortgage to H. Herman Sternbach & Co. to secure a debt of $35,000; (these mortgages were made October 29, 1890, and all recorded on the 30th, except the last, which was recorded the 31st;) all interest in block 7 by quitclaim deed to Lehman Spiegelberg, November 1, 1890, recorded on the third.

On the 31st of October, 1890, the firm of Leopold Bros. & Co. confessed judgments in the Superior Court of Cook county as follows : In favor of Emma Leopold for $15,000; of William Goodheart for $6500; of Louis Mayer for $20,000; of Lehman Spiegelberg for $15,188.50; of Carrie Spiegelberg for $10,150; of the firm of Gitterman & Wedeles for $7000; of Gustave Hartstein for $2150; and of Louis Pappe for $10,000.

In the month of October, 1890, the firm of Leopold Bros. & Co. proved to be hopelessly insolvent, and in view of that fact Henry Leopold consulted with D. K. Tenney, of the law firm of Tenney, Church & Coffeen, the result being the execution of the mortgages and the confession of the judgments above set forth. The purpose of giving those liens, Tenney's connection therewith, and his knowledge, at the time, of the existence of the $60,000 mortgage, are shown by the following communications sent out by his firm:

"CHICAGO, *October 29, 1890.*
"*H. Herman Sternbach & Co., New York City, N. Y.:*

"GENTLEMEN—The failure of Leopold Bros. & Co. will occur on the day this reaches you. We have advised them, and such is the fact, that the mortgage given you by Mr. H. Leopold, and which has been kept from record

by agreement, is wholly ineffectual as security to you, and is fraudulent as to the subsequent creditors. Our opinion is that the mortgage should never be asserted or mentioned. The courts have lately held that where such a mortgage is given and withheld from record, a new one, to take the place of the old one, is also fraudulent. Be that as it may, Mr. Leopold is anxious to secure you on his individual property to the extent possible in justice to some others to whom he is also under confidential obligations. * * * Your prompt attention is necessary to make this security valid. Please regard this information for the present as confidential.

"Respectfully,

TENNEY, CHURCH & COFFEEN."

"*Messrs. Stern & Kingsbury, 40 Wall Street, New York:*

"GENTLEMEN—We write you at the request of Mr. Stern, of Stern & Adams, this city. Mr. Henry Leopold gave to your clients, H. Herman Sternbach & Co., last winter, so we are informed, a mortgage on his individual real estate to secure a line of accommodations, which, by agreement between the parties, was to be kept off the record, so as not to injure the credit of Leopold's firm. A few days since, when the firm was about to get into hot water, Mr. Leopold informed us of this mortgage, and we told him such a mortgage would afford no security whatever to the mortgagee as against creditors whose debts were contracted after its date, but as to that it would be fraudulent. Nearly the entire indebtedness of the firm has been contracted since that time, consequently we regard that security as of no value whatever, and so informed Mr. Leopold, and that if his firm was about to fail, that he had better consider the situation carefully, the same as if that mortgage had not been given, and make such just and equitable preferences among his confidential creditors as he thought the circumstances attending each called for. He has done so,

and has secured your clients by a mortgage on the undivided three-fourths of a block of ground at the corner of Calumet avenue and Fifty-first street, opposite the Washington Park, to the extent of $35,000, subject to two prior mortgages, one of $4500, and one of $7000. The property we suppose to be ample security for the three mortgages. Immediately following that came vast numbers of confessions of judgments. We wrote your clients to ratify our act in accepting this mortgage, so as to make it valid, and they promptly did so through Mr. Stern here. We do not expect to represent them in any other respect, unless they should wish us to, as we are the attorneys of Leopold Bros. & Co.

"Respectfully,

TENNEY, CHURCH & COFFEEN."

There was a direct employment of Tenney, Church & Coffeen by appellants Lehman and Carrie Spiegelberg and Mayer and Goodheart at the time the judgments were confessed in their favor, though the papers for that purpose had all been prepared by Tenney in advance of such employment. Neither Tenney nor his firm was employed by appellants Cole, Haas or Carrie B. Leopold in person until after the execution of the several mortgages in their favor; nor had they any knowledge of the fact that such instruments were to be executed until they were delivered to them by Tenney, but they were accepted by them, and returned to him to be placed on record. It clearly appears from the testimony of Tenney, that while Henry Leopold designated the creditors which he wished to prefer, the plan and method of doing so were recommended by himself, as attorney, and consented to by the firm of Leopold Bros. & Co. and Henry Leopold.

The circuit court held each of the parties in whose favor these liens were given, chargeable with notice of complainants' mortgage, "from the fact that Henry Leopold and his attorney acted for them in that behalf, though without in fact informing them of the existence

of that mortgage." That court decided, however, that the $60,000 mortgage was fraudulent in law, and void as against those parties as to so much of their respective debts as were contracted after its execution, because it had been withheld from record by agreement of the parties thereto, and decreed accordingly, thus giving $6500 of the $13,400 secured, to Cole, and $5387.21 of the $10,000 to Haas, and each of the confessed judgments in full as to lot 4, and each of the judgments in full as to the undivided three-fourths of block 7, priority over complainants' mortgage. By its decree the whole of the debt of Carrie B. Leopold, and the remaining portion of the debts due Cole and Haas, were made junior to the lien of each of the confessed judgments. The $35,000 mortgage in favor of complainants was held void, and a decree of foreclosure on the $60,000 mortgage entered, subject to the liens found entitled to priority, as above stated. From that decree the complainants in the original bill, Charles Sternbach et al., Isaac Haas et al., holders of the mortgages of October 29, and Lehman Spiegelberg et al., in whose favor judgments had been confessed, appealed to the Appellate Court for the First District. There, on a hearing of the several appeals as one, it was held the circuit court had erred in deciding that withholding complainants' mortgage from record was a fraud in law, and postponing it to the lien of said junior mortgages and judgments, and in that respect the decree below was reversed but affirmed in all others, the cause being remanded, with directions to the circuit court to correct its decree by adjudging the mortgage to Charles Sternbach for $60,000 a valid and first lien upon the premises described therein, as against the parties in whose favor the junior mortgages were executed and judgments confessed. From that judgment this appeal is taken.

Complainants in the original bill insisted in the Appellate Court, not only that their first mortgage was a valid prior lien, but that the one for $35,000, made on

the 29th of October, was also valid. Haas, Cole and
Carrie B. Leopold assigned cross-errors in that court,
questioning the correctness of so much of the decree of
the circuit court as postponed the mortgages in their
favor to the judgments confessed October 31, 1890. Both
these contentions are renewed here. These, with the
question whether the mortgage of February 8, 1890, is
entitled to priority over the mortgages and judgments
in favor of Haas, Cole and Carrie B. Leopold, and Leh-
man, Carrie Spiegelberg, Mayer and Goodheart, (the two
appeals being treated as one,) form the issues in this
court. The argument of counsel is mainly directed to
the last of these questions, and it will be first consid-
ered. In its decision two considerations arise : First,
was the senior mortgage fraudulent and void as to liens
created to secure debts contracted after its execution,
because of its concealment; and second, if valid, should
holders of the junior liens be charged with notice of its
existence when they took their liens.

The contention of appellants in support of the first of
these propositions is based upon the rule announced in
*Hungerford* v. *Earl*, 2 Vern. 261, and later cases, that "a
deed not at first fraudulent may afterwards become so
by being concealed or not pursued, by which means cred-
itors are drawn in to lend their money." It is very
earnestly contended that, as between these parties, ap-
pellees' mortgage is, within that principle, fraudulent,
both in fact and in law.

We said in *Lawson* v. *Funk*, 108 Ill. 502: "The author-
ities clearly establish two distinct grounds upon which
conveyances and other contracts will be deemed fraudu-
lent as against creditors: First, such as are entered into
with a fraudulent intent ; and second, such as, from the
terms of the agreement or the nature of the transaction
itself, are deemed so as a mere inference of law, without
regard to the motives or actual intentions of the contract-
ing parties. In the first class of cases the fraudulent

intent is always a question of fact, to be established by extrinsic proofs; in the latter, the agreement, under the circumstances shown, is deemed fraudulent, although the parties may have acted in the best of faith." Actual fraud is a "deception practiced in order to induce another to part with property or to surrender some legal right, and which accomplishes the end designated." (Cooley on Torts 474. See 1 Story's Eq. Jur. 186, 187.) "By constructive frauds are meant such acts or contracts as, though not originating in any actual evil design or contrivance to perpetrate a positive fraud or injury upon other persons, are yet, by their tendency to deceive or mislead other persons, or to violate private or public confidence, or to impair or injure the public interests, deemed equally reprehensible with positive fraud, and, therefore, are prohibited by law, as within the same reason and mischief as acts and contracts done *malo animo.*" (1 Story's Eq. Jur. 258.)

The circuit court found and recited in its decree that the withholding of the mortgage in question from record was without fraud in fact, and the members of the Appellate Court, though divided upon another feature of the case, unanimously concurred in that finding. While the unsworn answer of Henry Leopold sets up conversations between himself and Charles Sternbach relative to keeping the mortgage off record and concealing it from others, which, if true, would establish a wicked conspiracy to defraud creditors by giving a false credit to himself and his firm, his own testimony does not support those allegations. We have gone over his entire testimony, as well as that of Charles Sternbach and Oscar M. Stern, who testified to a conversation with Leopold on the subject of making the mortgage, about the time it was executed, and we are unable to find sufficient evidence to establish a fraudulent design or purpose on the part of complainants or Charles Sternbach in withholding the mortgage from record. The testimony of Stern-

bach, corroborated by that of Stern, is to the effect that it was so withheld at the request of Leopold, as a favor to him, with the understanding that the mortgaged property would shortly be sold and the indebtedness liquidated. Unless that testimony is willfully false, Sternbach at that time believed Leopold Bros. & Co. perfectly solvent, without reference to this individual property of Henry Leopold, and the latter does not deny that he then told him that the firm was abundantly good for all its liabilities, though he denies telling him, as he swears, that it was worth $300,000 over all its debts. In determining the question of actual fraud, the fact that the mortgaged premises were the individual property of the mortgagor, and not that of the firm, is entitled to at least some consideration. There was no agreement or promise to keep the mortgage secret, but simply that it should not then be recorded, and there is an entire absence of proof that Charles Sternbach or his firm did or said anything, other than withholding the mortgage from record, which could have misled others as to its existence. We are not disposed to disturb the finding of the courts below upon the question of actual fraud.

To our minds there is much less reason, in view of the decision in *Field* v. *Ridgely*, 116 Ill. 424, for holding that mortgage fraudulent in law. In the case cited, one of the acts of fraud relied upon by the appellants was the failure of the appellees to put their mortgage on record, and in passing upon the question so raised we said: "We are aware of no principle, outside of self-interest and prudence in business, that requires the holder of a mortgage to put it on record at any particular time. By not doing so promptly he runs the risk of having it postponed to junior liens, and even of losing the benefit of it altogether. As to subsequent purchasers and creditors without notice, such securities take effect from the time of filing for record, only." The correctness of this statement of the law, in view of our statute, cannot be seri-

ously questioned. No one will contend that the recording of a mortgage is in this State necessary to its validity. Recording such instruments serves but one purpose, and that is to make them valid as against creditors and subsequent purchasers without notice. Section 31, chapter 30, of the Revised Statutes, provides that they shall take effect, as to such persons, from the time of filing for record, and not before. No time is fixed within which the filing for record must take place in order to give such an instrument validity. It cannot, therefore, be said that the mere omission to record is fraudulent *per se* as to subsequent creditors of or purchasers from the mortgagor.

But it seems to be thought that the motive or cause of such failure may render the omission fraudulent as a matter of law,—that is to say, while the holder of a mortgage may negligently, or even intentionally, of his own motion withhold a mortgage from record and be guilty of no fraud, yet if he does so at the request of the mortgagor the law will charge him with fraud, no matter how innocent may have been his motive for yielding to such request. This position we regard as untenable. If to not record a mortgage is fraudulent in law as to third parties, it must be so because, as to them, there is a duty on the part of the mortgagor to record, the failure to perform which tends to mislead them to their injury. The fraud in that case, and consequent injury, would result from a failure to record, regardless of the motive or reason for such failure. Therefore, if withholding an instrument from record is fraudulent because of an agreement or other reason for so doing, it is not so *per se*, but in fact. In other words, whenever the motive is involved the question becomes one of intention,—actual fraud as distinguished from fraud in law, —and so the question has generally been presented and disposed of. Wait on Fraudulent Conveyances, sec. 235, and cases quoted from.

Of the many cases cited by counsel for appellants as sustaining the view that the withholding of an instrument from record by agreement is fraudulent *per se,* most, if not all, in view of the statutes of the States in which they were rendered, are reconcilable with the views we have here expressed. In much the larger number of those cases the question was treated as one of fact. But if it were otherwise, we regard the question as free from doubt, in the light of our statute. Certainly, the fact that a promise is made not to record an instrument properly admissible to record, whereby it becomes constructive notice of its existence, is a fact strongly tending to prove a fraudulent intent, and in some cases has been held sufficient, of itself, to defeat or postpone the instrument to subsequent conveyances or liens. In other cases such a promise, attended by a different state of facts, the courts have decided not fraudulent. *Magovern* v. *Richard,* 27 S. C. 272; *Sawyer* v. *Turpin,* 91 U. S. 114; *Folsom* v. *Clemence,* 111 Mass. 273; *Thouron* v. *Pearson,* 29 N. J. Eq. 487; *Scott* v. *McMurran,* 7 Blackf. 284; *Scott* v. *Alford,* 53 Tex. 82.

Our conclusion then is, that complainants' mortgage must be treated, in all respects, as though the failure to record it had been the result of mere negligence on the part of the mortgagees.

On the finding of the circuit court that the mortgage of complainants was fraudulent in law as to subsequent creditors of the mortgagor, its decree giving preference to so much of the debts secured by the junior liens as were contracted after that mortgage was executed but postponing them as to so much thereof as existed at that time, was perfectly consistent, and in conformity with the law. If that mortgage was void, in law, because of the agreement to withhold it from record, it was only so as to debts of the mortgagor contracted after it was made, but to that extent its invalidity in no way depended upon the absence of notice of its existence. The Appellate Court, however, having reversed the finding of that court

as to its being fraudulent in law and affirmed its finding that it was not fraudulent in fact,—in both of which conclusions we concur,—the question between the parties as to the priority of their respective liens is resolved into one of notice,—that is, if the senior mortgage was neither fraudulent in law nor fact it must be treated like any other unrecorded mortgage, and be given priority over all subsequent liens taken with notice of its existence, but postponed as to all others.

It remains to be seen, then, whether, at the time appellants took their mortgages and judgments, they were chargeable with notice of the prior mortgage to appellees, and the determination of that question may, we think, be made to depend upon whether notice to D. K. Tenney was, in law, notice to appellants. If, as a matter of fact, he acted solely as the attorney of Henry Leopold in procuring these mortgages and judgments, and in his interest alone, to procure an extension of time on appellants' claims, or if he simply performed the ministerial act of executing those liens, (both of which positions are insisted upon by counsel for appellants,) his knowledge of the senior mortgage could not be imputed to appellants even though they derived a benefit from his services. The evidence does not, however, as we understand it, support either of these contentions. The testimony of Tenney himself, and the letters written by his firm to appellees and their attorneys in New York, as well as the testimony of Henry Leopold, clearly show that the sole object and purpose of his employment were to defeat the mortgage of appellees, to the extent of giving appellants a preference over it. He was, for all practical purposes, the attorney of these appellants, though employed by Henry Leopold.

"If one without authority assume to act as the agent of another, and the latter take the benefit of the unauthorized act by claiming rights under it, or otherwise ratify the act of his self-appointed agent, he must take

such benefit charged with notice of such matters as appear to have been within the knowledge and recollection of the agent at the time of the transaction." (Wade on the Law of Notice, 691.)   The foregoing rule is deduced from the decision in *Hovey* v. *Blanchard*, 13 N. H. 145.   To the same effect see *Brotherton* v. *Hall*, 2 Vern. 573.  Mechem, in his work on Agency, (sec. 167,) says :  "By ratifying the unauthorized act the principal assumes and adopts it as his own, and, as has been seen, this adoption extends to the whole of the act,—it goes back to its inception and continues to its legitimate end.   Subject, therefore, to an exception to be immediately noticed, it is the universal rule that, as against the principal, the ratification is retroactive, and equivalent to a prior authority, or, to use the language of a distinguished writer and judge, 'no maxim is better settled, in reason and law, than the maxim *omnis ratihabitio retrotrahitur, et mandato priori equiparatur*,—at all events where it does not prejudice the right of strangers."  He also quotes from FIELD, J., in *Cook* v. *Tulles*, 18 Wall. 332 :  "The ratification operates upon the act ratified, precisely as though the authority to do the act had been previously given, except when the rights of third parties have intervened between the act and the ratification."

We think the Appellate Court reached a correct conclusion upon this branch of the case.  The dissenting views of Mr. Justice SHEPARD are, in our opinion, based upon conclusions of fact not authorized by the evidence. As we have in effect said, D. K. Tenney, though retained by Henry Leopold, was employed in the interest of and acted for appellants.  He performed not merely ministerial duties, but used his professional skill and discretion in their behalf.  To allow them the full benefit of his services, and at the same time relieve them from the legal effect of notice to him of the existence of the instrument he was seeking, in their interests, to defeat, would be unjust, and, in our opinion, contrary to authority.

The circuit court erred in giving the confessed judgments preference over the mortgages of appellants Haas, Cole and Carrie B. Leopold. The mortgages were recorded on October 30, but the judgments were not entered until the 31st. No reason is shown why the former should be held subject to the latter.

As to the contention of appellees that the $35,000 mortgage in their favor is valid, we concur in the conclusion reached by both the circuit and Appellate Courts. That mortgage was executed and intended to secure a part of the same indebtedness secured by the one for $60,000. Both cannot stand.

The judgment of the Appellate Court will be affirmed, but its remanding order will be modified so that the mortgages of Cole and Haas and Carrie B. Leopold shall be given preference over the confessed judgments of October 31, 1890.

*Judgment affirmed.*

Mr. JUSTICE PHILLIPS, dissenting.