# CASES DECIDED

IN THE

# Supreme Court of Appeals
## OF VIRGINIA.

𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## HENRY'S EXECUTRIX V. PAYNE.

September 17, 1919.

1. CHATTEL MORTGAGES—*Notice by Mortgagee of Another's Owner-ship.*—Where a mortgagee of personal property takes the mortgage with prior notice that the property did not belong to the mortgagor, but to another, the mortgagee acquires no lien on the property by virtue of the mortgage.

2. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Sale of Personal Property Without Delivery of Possession—Recording Acts.*—Section 2465, Code of 1904, provides that every bill of sale of goods and chattels, when the possession is allowed to remain with the grantor, shall be void as to subsequent purchasers for valuable consideration without notice and creditors until recorded. In the instant case the appellee, the mortgagee of personal property, who contended that the bill of sale on this property held by appellant's testator was void under this statute, was not a purchaser without notice within the meaning of this statute, as he had express notice that the property mortgaged to him was not the property of the mortgagor but of the mortgagor's father. Appellee therefore acquired no lien on the property by his chattel mortgage, and a creditor without a lien stands on no higher footing than his debtor, and cannot successfully invoke the benefit of this statute.

3. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Retention of Possession of Personal Property—Estoppel—Case at Bar.*—A son executed a bill of sale of a law library to his father, which was not recorded. The son retained possession of the law library and complainant in the instant case extended credit to

1

the son for office rent on the faith of his ownership of the library. Complainant had no right to proceed against the library as he had acquired no lien thereon and there was no proof in the record of fraud, or that the father had any knowledge that complainant was extending credit to the son on the faith of the son's ownership of the library.

*Held:* That the father or his successor in title was not estopped to claim the library as against complainant.

4. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Retention of Possession of Personal Property—Estoppel—Creditor's Remedy—Case at Bar.*—In the instant case the law afforded ample remedy to the complainant. He might have acquired a lien by distress warrant or by execution levied on the library prior to the recordation of the bill of sale, instead of relying on the hope that the father would consent to the chattel mortgage and thus make that a valid lien.

5. FRAUDULENT SALES AND CONVEYANCES—*Retention of Possession by Grantor—Rule at Common Law.*—The possession and apparent ownership of tangible personal property in one, while the actual ownership undisclosed by any matter of record, is in another, may mislead third persons to extend credit to the former to their possible financial loss, especially when the apparent owner represents himself to be the true owner. But this is permitted at common law, for independent of statute a creditor stands in the shoes of his debtor, and can subject no greater rights of property than the debtor in truth has, whatever may be the apparent property rights of the debtor. So far the legislature has enacted no statute prohibiting such severance of the real from the apparent ownership of property, where it results from a *bona fide* sale and purchase for value and no lien creditor of the vendor is affected.

Appeal from a decree of the Corporation Court of city of Roanoke. Decree for complainant. Defendant appeals.

*Reversed and Remanded.*

The controversy in this suit in equity is between the appellee Payne, claiming the right to have sale of certain personal property, consisting of a certain law library, under a writing which is, in effect, an equitable chattel mortgage, executed by Randolph Henry at a time when he was in possession of the library, conveying same to secure the payment

of a certain note of the latter given to cover certain accrued and past-due office rent owing by him to appellee, and the appellant, who claims that her testator, R. R. Henry, was the owner of the library by purchase from said Randolph Henry, as evidenced by a bill of sale which was unrecorded at the time of the execution of said chattel mortgage, appellant claiming, however, that appellee had actual notice of such ownership of R. R. Henry prior to the execution of the chattel mortgage.

There is no question of fraud in the case. The facts are undisputed that R. R. Henry was the *bona fide* purchaser for value of the library of Randolph Henry, as evidenced by said bill of sale, some four and a half years prior to the execution by the latter of the chattel mortgage and several years prior to the beginning of the renting by latter of a certain law office of the appellee, from which the indebtedness aforesaid secured by the chattel mortgage arose. The library was left by the said vendee in the possession of the vendor thereof, the said Randolph Henry, and the latter, on renting a law office of appellee (first of one room, later of two rooms), moved the library therein. There is some question raised in the examination of appellee on cross examination by Randolph Henry, acting as attorney in the case, as to just what representations the latter made to appellee as to the ownership of the library at the time the law office rental contract was entered into. The appellee, however, testifies positively that such debtor told him at the time of said renting and before the debt for rent aforesaid was incurred and also subsequently along during the tenancy, which continued for somewhat over a year, that the library "was his library," that he owned it, and that it was on the faith of this representation that appellee rented the premises aforesaid to said debtor and allowed him to continue to occupy the premises and incur said indebtedness. Randolph Henry, on the same day and again about

three months later, gave his depositions in the cause in which he nowhere contradicts the said testimony of the appellee. Hence, the testimony of the latter on this subject must be taken to be true.

However, it is admitted by the appellee in his testimony that on the same day of and prior to the execution of said chattel mortgage by Randolph Henry, the latter said to appellee: "I am going to give you a deed of trust on this library and furniture; the library belongs to my father; but he will have no objection to my giving a deed of trust on it."

The record shows that that was the first intimation that appellee had that the library belonged to R. R. Henry, the father of said debtor, and that it did not belong to the debtor.

The debtor having given the chattel mortgage aforesaid, vacated the premises aforesaid, moving the library into another building in the same city, but within the jurisdiction of the same court, which is the court below.

The fact that the chattel mortgage was given by the son never came to the knowledge of the father nor was his consent thereto ever asked or given. In explanation of this, the record shows that the said debtor did not see his father subsequently to the giving of said chattel mortgage until about two months thereafter, when the father was in the said city at Federal court, but was busy, and the debtor had no opportunity to talk to him then, as the debtor testifies. The father lived some distance away in another part of the State and went home from said court sick, and this illness lingered, gradually getting worse until he died in October, 1915, some six months after the chattel mortgage, aforesaid, was given. The son and debtor, during the last-named period, saw the father only once, which was in his home in August, when the father was not expected to live, was unconscious the most of the time and was almost speechless

during his lucid intervals, so that, as the son testifies, it was impossible to discuss any business matter with him. The son never saw the father alive after that.

There is no evidence in the record that the father, the owner of the library, at any time knew that the son and debtor aforesaid was representing to the appellee or to any one else that the library was his (the son's) property or that the latter was obtaining credit of the appellee on the faith of such ownership.

Notwithstanding the prior notice given appellee, as aforesaid, of the true ownership of the library, the appellee accepted the chattel mortgage aforesaid and promptly recorded it.

Appellee did not sue out and have levied on the library any distress warrant for said rent indebtedness nor did he have any execution levied thereon.

Appellee did later obtain a judgment against said debtor for the amount of said indebtedness with interest and costs of the action, but meanwhile the bill of sale aforesaid had been duly recorded in the lifetime of the said R. R. Henry, namely, on August 13, 1915, about two months prior to the death of the latter, it being taken from among the papers of R. R. Henry by the appellant and sent to said debtor for recordation, and it would, therefore, have taken precedence of any lien that could have been thereafter acquired by appellant by having execution issued upon said judgment and levied upon the library.

The appellee, prior to the recordation of said bill of sale, seems to have relied wholly upon the representation of the debtor made just before the execution of the chattel mortgage, as aforesaid, and the hope thus engendered that the father would have no objection to the "deed of trust" on the library. Upon the death of the father, without having consented to the mortgage being given, that hope failed. But

it was then too late for appellee to obtain a lien for his debt by distress warrant for rent, or by obtaining judgment and levy of execution ahead of the bill of sale aforesaid, which had been recorded, as aforesaid. Hence, appellee was compelled to depend and rest his case, and does rest his case in this suit, upon his rights as a purchaser under the chattel mortgage.

By the decree under review, the court below held that the lien and claim of the appellee upon the library and furniture is superior to the claim of appellant.

There is no controversy in the cause as to the correctness of such decree as to the furniture which was the property of the debtor, Randolph Henry. The sole controversy is over the library, which was not the property of the latter, but of appellant's testator, as aforesaid.

*Randolph Henry* and *Thos. M. Darnall,* for the appellant.

*Stuart & Williams,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The material facts of the case are set forth in the statement preceding this opinion. It is one of grave hardship upon the appellee, as we feel compelled to decide it; but we may not allow our feeling that it is a hard case lead us to disregard well-established rules of law.

[1] 1. Appellee does not controvert that, in so far as his claim of lien is concerned, his position is the same as that of any creditor the payment of whose debt is secured by a deed of trust, namely, that of a purchaser from the grantor of such a deed of trust. Appellee takes the position that the chattel mortgage under which he claims a

lien on the library is in truth a deed of trust, and by his pleading he seeks to have it enforced as a deed of trust. Appellee, therefore, being a purchaser from the grantor of said chattel mortgage, could not and did not acquire any lien on the library by virtue of such mortgage, because, as appears from the statement of facts preceding this opinion, he took the mortgage with prior notice that the library did not belong to his grantor, but to another, namely, the grantor's father, appellant's testator.

[2] 2. Appellee relies upon section 2465 of the Code as rendering the bill of sale held by appellant's testator void as against the appellee, a creditor of Randolph Henry, the grantor in such bill of sale. So far as material, such section provides as follows: "Every * * * bill of sale * * * of goods and chattels when the possession is allowed to remain with the grantor * * * shall be void as to subsequent purchasers for valuable consideration without notice and creditors, until and except from the time that it is duly admitted to record * * *. "But the appellee, as we have seen, was not such a purchaser, and the creditors who are entitled to the benefit of this statute are lien creditors only. A creditor without a lien stands on no higher footing than his debtor and cannot successfully invoke the benefit of this statute. *McCandlish* v. *Keen,* 54 Va. (13 Gratt.) 615; *Dulaney* v. *Willis,* 95 Va. 606, 29 S. E. 324, 64 Am. St. Rep. 815. As we have seen above, appellee acquired no lien on the library by the chattel mortgage aforesaid. It is not claimed that he is a lien creditor in any other right. Therefore, section 2465 of the Code has no application to the case.

3. But appellee contends "that the supposed claimant, R. R. Henry, and the defendant, Randolph Henry, will not be permitted by a court to sit down and suppress knowledge of the claim of the said R. R. Henry to the ownership of

the property until the defendant, Randolph Henry had become involved to the extent he did, as shown in this record, in debt to appellee, and then come in and deprive the appellee of his rights to proceed against said property when it is clearly shown in the record of the cause that the credit was given to the defendant, Randolph Henry, on the faith of his absolute ownership of the books and office furniture which was in appellee's, George W. Payne's, building, and the testimony of the defendant, Randolph Henry, shows that his father, R. R. Henry, was here during the time that these books were in the building of the appellee, and that nothing was said or done by either, R. R. Henry or Randolph Henry, to assert any claim for the benefit of the said R. R. Henry to the said books or to any interest therein, and the said George W. Payne, the appellee, was all along relying upon the said books and furniture as security for his debts and was carrying the said defendant, Randolph Henry, on the faith of his unconditional and absolute ownership of said property as shown by the record in the case."

[3] This position erroneously assumes that appellee had the right "to proceed against said property" at a time when he had acquired no lien thereon, and ignores the absence of any proof in the record of fraud or that R. R. Henry had any knowledge at any time that appellant contemplated or was extending or had extended credit to Randolph Henry on the faith of the absolute ownership by the latter of the library. The record, therefore, fails to make out a case of estoppel against the appellant and in favor of the appellee or to otherwise sustain the position of appellee under consideration.

[4, 5] We can readily see how the possession and apparent ownership of tangible personal property in one, while the actual ownership, undisclosed by any matter of record, is in another, may mislead third persons to extend

credit to the former to their possible financial loss, especially when the apparent owner represents himself to be the true owner. But this is permitted at common law, for independent of statute a creditor stands in the shoes of his debtor and can subject no greater rights of property than the debtor in truth has, whatever may be the apparent property rights of the debtor; and whether such status of relative rights shall be allowed to continue to exist must be determined by another department of government than the judiciary. It is solely within the province of the legislature to act in the premises. So far, the legislature has enacted no statute prohibiting such severance of the real from the apparent ownership of property, where it results from a *bona fide* sale and purchase for value and no lien creditor of the vendor is affected. And there may be good and sufficient reasons of public policy why the legislature has not extended the registry statute so as to protect nonlien, as well as lien, creditors in such a situation as that under consideration. And in the instant case, indeed, the law as it exists afforded ample remedy to have given the appellee the relief he now desires, if he had acquired a lien by distress warrant or by execution levied on the library prior to the recordation of the bill of sale, instead of relying on the hope that plaintiff's testator would consent to the chattel mortgage and thus make that a valid lien.

For the foregoing reasons, we are constrained to reverse the decree under review in so far as it holds the library aforesaid subject to the lien of appellee's debt; the appellant will be decreed to be entitled to the library free of all claim of the appellee, and the cause will be remanded for further proceedings concerning the sale of the furniture.

*Reversed and Remanded.*