# Richmond.

## WILLIAM G. MAUPIN, JR., ET AL., V. B. LEVISON, ET AL.

### May 28, 1925.

1. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Withholding Instruments from Record.*—Withholding an instrument from record is not of itself, and in the absence of any evidence of fraudulent intent, a sufficient reason for setting aside the conveyance as fraudulent, there must be something in addition to the mere withholding the instrument from record, something superadded which created a false credit for the maker of the instrument.

2. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Withholding Instruments from Record—Case at Bar.*—In the instant case a deed of trust was given to secure a brother of the grantor for *bona fide* loans and indorsements made by the brother. Every cent of the money was paid out by the brother either to the grantor or to his creditors. The deed was not withheld from record at the request of the grantor, and neither the grantor nor beneficiary knew that the deed had not been recorded. The trustee withheld the deed from record not for the purpose of giving the grantor a fictitious credit, but to protect the interests of the grantor's creditors. The deed of trust was attacked by the holder of an accommodation note of the grantor. Neither the grantor nor beneficiary received the proceeds of this note. The beneficiary of the deed of trust knew nothing of the note or the negotiations concerning it until months after such negotiations.

   *Held:* That the deed of trust could not be set aside as in fraud of creditors.

3. MORTGAGES AND DEEDS OF TRUST—*Withholding from Record—Fraudulent and Voluntary Conveyances—Case at Bar.*—There is no legal obligation upon a beneficiary in a deed of trust to record it. He runs the risk of some other creditor securing a lien upon the property conveyed which would take precedence over his lien if the same is secured before his deed of trust is recorded, but where the deed is recorded before the lien is acquired, as in the instant case, the trust deed takes precedence unless the beneficiary has taken some active steps, before the recordation of his deed, to deceive or mislead a third party into thinking that the grantor still owns the property, and on the faith of this belief becomes a creditor of the grantor. Merely withholding

the deed from record and remaining quiet do not constitute fraud in law.

4. MORTGAGES AND DEEDS OF TRUST—*Withholding from Record—Estoppel of Beneficiary—Case at Bar.*—In the instant case a trustee in a deed of trust in the interest of the creditors of the grantor withheld the deed from record. The holder of an accommodation note of the grantor questioned the trustee as to whether the note was in order, and as to whether it was good. The beneficiary in the deed of trust knew nothing of this conversation.

*Held:* That the beneficiary was not estopped from asserting the priority of his deed of trust against the accommodation note by anything said by the trustee in this conversation.

Appeal from two decrees of the Hustings Court of the city of Portsmouth. Decrees for complainants. Respondents appeal.

*Reversed.*

The opinion states the case.

*E. R. F. Wells,* for the appellants.

*James H. Willock, Thomas W. Shelton* and *Alfred Anderson,* for the appellees.

CHICHESTER, J., delivered the opinion of the court.

The object of this suit was to have a certain deed of bargain and sale and three deeds of trust, copies of which were filed as exhibits with the bill, declared fraudulent, null and void as hindering, delaying and defrauding the complainants, to have said deeds set aside and to subject the real estate conveyed thereby to the payment of the debt of complainants.

The bill was filed in June, 1921. It charges the grossest fraud on the part of S. D. Maupin, the grantor in the several deeds, Wm. G. Maupin, Jr. (usually referred to in the record as "Bub" Maupin, a brother of S. D. Maupin), Wm. G. Maupin (trustee), a nephew, Nannie

M. Maupin, E. G. Maupin, Mattie Maupin, Alieene Maupin, Ruth Maupin, George W. Maupin and Edmonia Maupin, brothers, sisters, nieces and nephews of S. D. Maupin, all of whom are made parties defendant.

The deed of bargain and sale referred to bears date October 10, 1919; was executed by S. D. Maupin, who was unmarried, and conveyed all of his interest consisting of one-ninth of his father's and mother's landed estates, which were undivided, to his living brothers and sisters and to the children, of such of them as were deceased.

The three deeds of trust conveyed all real estate which S. D. Maupin owned individually to Wm. G. Maupin, trustee (the nephew), to secure Wm. G. Maupin, Jr. ("Bub"), for money loaned S. D. Maupin at various times to the amount of approximately $46,000.00 and to save him from loss on account of notes endorsed by him for his brother, S. D., to the amount of about $56,000.00. These deeds of trust bear the following dates: August 5, 1914, securing a note for $2,500.00; August 5, 1914, securing a note for $4,500.00, and November 1, 1919, to secure the payment of $46,000.00 in notes and $56,000.00 on account of endorsements. All these deeds of trusts convey identically the same lands.

The learned judge of the hustings court passed upon the validity of the last mentioned deed only. Indeed the whole controversy here is as to the validity of this deed, the trial court having declined to set aside the first named deeds of trust or to pass upon the validity of the deed of bargain and sale, declared the latter deed of trust void as to appellees and directed that it be set aside if the debt of Levison & Company was not paid in a stipulated time.

The record in this suit is a voluminous one as was

natural, since the bill charged actual fraud against appellants and all parties connected with the four deeds. The pleadings and the evidence took a wide range on this account, but there was a total failure to prove actual fraud, as the trial court very properly held, and hence we can leave out of consideration all pleadings and testimony which had to do with this charge, and confine ourselves to such proof as is pertinent to the very narrow issue which the learned chancellor passed upon and which is the sole issue before this court.

There were two decrees appealed from. One which set aside the deed of trust of November 1, 1919, entered January 31, 1923; and one which confirmed the report of the commissioner in chancery finding that the Levison & Company judgment of $7,500.00 was a lien on the property conveyed by the deed of trust and that it had priority over the deed of trust.

The assignments of error on account of the entry of these decrees involve one and the same question.

That question is, whether, as against Levison & Company, the fact that the deed of trust was withheld from record constitutes an act of constructive fraud, which would give priority to the Levison & Company judgment over the debt of the deed of trust creditor, "Bub" Maupin.

The facts of the case pertinent to this issue are as follows:

S. D. Maupin, sixty-five years of age, at the institution of this suit, a life long resident of Portsmouth, for many years connected with the American National Bank of Portsmouth and at the date of the filing of this suit its vice-president, became very much involved by reason of his undertaking to finance the development of certain real estate in and near the city of Baltimore. He was associated with one Allen Benny in this enterprise,

and was induced by him to give a number of accommodation notes. It developed that numerous renewal notes taken from him were discounted without taking up the originals.

In the early fall of 1919 his affairs became very much involved. Being unable to extricate himself from his financial difficulties he employed his nephew, William G. Maupin, an attorney, to ascertain the extent of his indebtedness and straighten out his financial obligations if possible.

His nephew ascertained his uncle's indebtedness to be approximately $300,000.00, of which $46,000.00 on account of loans, and $56,000.00 on account of notes endorsed, was due to S. D. Maupin's brother, "Bub" Maupin.

These funds had been advanced and the endorsements made by "Bub" Maupin for the benefit of S. D. Maupin's creditors. Wm. G. Maupin, upon becoming acquainted with the situation advised and negotiated sale of the one-ninth interest of S. D. Maupin in his parents estate, to his brothers and sisters as stated, receiving therefor $40,000.00 which was a fair price, and all of which was paid over to creditors, exclusive of his brother "Bub" Maupin.

He also had S. D. Maupin convey to him, as trustee, all of his individual real estate holdings, of the value approximately of $24,000.00 net, to secure to his brother "Bub" Maupin the payment of the loans and to save him from loss as to the endorsements.

The value of the property fell far short of doing this but that was the object of the deed of trust. The total indebtedness on these accounts however being considerably over $100,000.00. This is the deed of trust here sought to be set aside.

Wm. G. Maupin ascertained that the chief source of

his uncle's financial difficulties arose from an undertaking with one Allen Benny to finance the development of lots in and near Baltimore, Md. To this end he had issued a very large number of accommodation notes, many of them payable to Benny but most of them payable to an associate of Benny's, one W. P. Whitaker, who seems to have been a man of financial worth, while Benny had little or no financial standing. It was for the purpose of meeting payment of many of these notes that S. D. Maupin called on his brother "Bub" from time to time for loans and endorsements.

Among the accommodation notes outstanding was one for $7,500.00 dated January 26, 1920, which was a renewal of several smaller notes. This note was held by W. P. Whitaker. Whitaker, as has been pointed out, held or had held numerous such notes of S. D. Maupin and he usually paid them when they fell due. Due to the financial stress in the early part of 1920, however, Whitaker had the appellee, Levison & Company, a firm of New York brokers, discount this note for $7,500.00 after first informing Wm. G. Maupin that he (Whitaker) intended to do so and stating that he would take care of the note when it fell due.

On Whitaker's advice Levison & Company called S. D. Maupin and asked him "whether the note was in order," and he referred them to his nephew and attorney, Wm. G. Maupin.

Levison's testimony upon this point was that he asked Wm. G. Maupin whether the note was in order, and whether it would be paid; whereupon Wm. G. Maupin told him that if the note had the signature of S. D. Maupin it was good, that it was given in connection with a transaction he, Wm. G. Maupin, was handling, and that no extension would be asked at maturity, but that it would be paid. It is worthy of note that·

nothing was asked or said concerning S. D. Maupin's financial worth or condition, or concerning any real estate owned by him.

Benny had purchased and was developing, with the funds furnished by S. D. Maupin and on his credit, a large number of lots in and around Baltimore, which were taken in his, Benny's name. Benny does not seem to have been much trusted by Wm. G. Maupin after he ascertained the condition of the affairs of his uncle, and he had no financial worth. Wm. G. Maupin, therefore, was undertaking to get a conveyance to himself by Benny of a sufficient number of these lots to help materially in meeting his uncle's obligations, or possibly, with the funds raised as above indicated, to pay his debts in full. He began negotiations with Benny to this end immediately after he found out the true situation, and in the meantime, fearing that Benny would decline to make the conveyance if he knew S. D. Maupin's brother was assisting him financially, he withheld, without the knowledge of S. D. Maupin, the deed of trust involved herein from record from the date of its execution, November 1, 1919, until March 15, 1920.

Wm. G. Maupin succeeded in getting from Benny 1,500 lots, the equity in which was worth $300,000.00, and with these, many of which were conveyed directly to creditors, S. D. Maup n's indebtedness was reduced to about $17,000.00, including the note held by Levison & Company, who declined to accept lots in payment of same. "Bub" Maupin, however, did not share in the distribution of lots or funds.

When the note for $7,500.00 which Levison & Company held came due the latter part of April, 1920, and Whitaker failed to pay it, demand was made upon S. D. Maupin, and upon failure to settle, action was brought and judgment obtained against him. This suit was in-

:stituted to set aside the deed of trust·under considera-
tion here ·(and the other deeds mentioned) as hereto-
fore stated, and to subject the land conveyed to the pay-
.ment of the judgment.

It is upon an appeal from the decrees complained of
that this cause is before us.

Since the question of actual fraud is eliminated from
the case, carrying with it the charges that the deed of
trust of November 1, 1919, was made to hinder, delay
and defraud the creditors of S. D. Maupin, and that the
.deed of. trust was withheld from record for the purpose
·of defrauding his creditors, the necessary inquiry now is
·whether there was, by the creditor "Bub" Maupin or
.permitted by him to be done in addition to the with-
holding of the deed of trust from record, any act which,
coupled with such withholding from record, gave to
S. D. Maupin a fictitious credit, which credit so created
led Levison & Company to purchase the note for
.$7,500.00. This is so because it is well settled that with-
holding a deed or deed of trust from record is not of it-
self evidence of fraud.

In 24 Am. & Eng. Enc. of Law (2nd ed.), 113, we find
this statement of the law:

[1] "It is well settled that withholding an instrument
from record is not of itself, and in the absence of any evi-
dence of fraudulent intent, a sufficient reason for setting
aside the conveyance as fraudulent."

In *Folsom* v. *Clemence*, 111 Mass. 273, it was held:

"The fact that a mortgagee of personal property
.agreed not to put his mortgage on record unless the
.mortgagor should have trouble, does not, as a matter of
law, avoid the mortgage as to creditors of the mort-
.gagor."

In *Haas* v. *Sternbach*, 156 Ill. 44, 41 N. E. 51, this rul-
ing was made:

"The fact that a mortgagee, at the mortgagor's request, refrains from recording the mortgage does not render it fraudulent as to the mortgagor's creditors."

In this case the question under consideration was discussed at great length, and the court held that delay in recording a deed was not fraudulent *per se* as to subsequent creditors, but that actual fraud must in each case be proved.

In *Stapylton* v. *Stockton*, 91 Fed. 326, 33 C. C. A. 542, it was said:

"The fact that such deed was not recorded until the day the bank closed its doors did not entitle the general creditors of the bank to have it set aside, where there was no agreement to withhold it from record, and, under the laws of the State, it was good as a mortgage as between the parties, though not recorded."

The case of *Henry* v. *Payne*, 126 Va. 1, 8, 9, 100 S. E. 845, is authority for the proposition that the withholding from record of a bill of sale whereby certain personal property was conveyed to the vendee, and allowing the vendor to remain in possession of the property on leased premises as the apparent owner, do not render the transaction fraudulent *per se*.

In the leading case of *Blennerhassett* v. *Sherman*, 105 U. S. 100, 117 (26 L. Ed. 1080), we find this clear statement of the law on this question and its limitations:

"It is not to be disputed that, except as forbidden by the bankrupt law, a debtor has the right to prefer one creditor over another, and that the vigilant creditor is entitled to the advantage secured by his watchfulness and attention to his own interests. Neither can it be denied that the mere failure to record a mortgage is not a ground for setting it aside for the benefit of subsequent creditors who have acquired no specific lien on the property described in the mortgage.

"But where a mortgagee, knowing that his mortgagor is insolvent, for the purpose of giving him a fictitious credit actively conceals the mortgage which covers his entire estate and withholds it from the record, and while so concealing it represents the mortgagor as having a large estate and umlimited credit, and by these means others are induced to give him credit, and he fails and is unable to pay the debts thus contracted, the mortgage will be declared fraudulent and void at common law, whether the motive of the mortgagee be gain to himself or advantage to his mortgagor."

Thus it appears that there must be something in addition to the mere withholding the deed of trust, something superadded, which created false credit and which false credit led complainant to become a creditor.

Voluminous though this record is, we have searched it in vain for this something in addition.

[2] There are some outstanding facts established by the evidence in this cause which it is well to advert to here, even at the expense of some repetition, as they throw a flood of light on the immediate question under discussion, and would seem to establish the good intention and the *bona fides* of all the Maupins concerned in the transactions chronicled in this record.

(1) The deed of trust in question was given by S. D. Maupin to secure his brother, William G. Maupin, Jr., the payment of various *bona fide* loans and endorsements which his brother, from time to time, had made to him. These loans, with interest, and these endorsements, aggregated in excess of $123,000.00. Every cent of this money was paid out by "Bub" Maupin, either to S. D. Maupin, himself, or to his creditors. There is absolutely no question as to the *bona fides* and amounts of these various loans and endorsements.

(2) The deed of trust was not withheld from record at

the request of the grantor, S. D. Maupin, and he did not know that it was not promptly recorded.

(3) "Bub" Maupin, the creditor secured, did not know that the deed of trust had not been promptly recorded. He left the matter of recordation to his nephew.

(4) William G. Maupin, the trustee, in the exercise of his judgment, did not cause the deed to be recorded until March 15, 1920.

(5) The trustee did not withhold from record said deed of trust in order to give his uncle, S. D. Maupin, a fictitious credit, but he did this for the sole purpose of promoting the interests of the creditors of S. D. Maupin.

(6) The failure to promptly record the deed of trust did not in any way redound to the benefit of "Bub" Maupin, the creditor secured, on the contrary it was against his interests, or of S. D. Maupin, the grantor.

(7) S. D. Maupin was simply the accommodation maker of the note payable to Whitaker, which Levison & Company bought from Whitaker.

(8) Neither S. D. Maupin nor William G. Maupin, Jr., obtained one penny of the proceeds of this note, or were benefited in any way by that transaction.

(9) "Bub" Maupin, the creditor secured in the deed of trust, did not know of the negotiations between Levison and Whitaker or of the conversation between Wm. G. Maupin and Levison, and not until months afterwards did he ascertain that Levison & Company had become the owners of such a note.

(10) All other creditors combined did not lose over $17,000.00 on account of the failure of S. D. Maupin, while "Bub" Maupin lost at least $100,000.00.

(11) The record establishes that Wm. G. Maupin was not trying to get additional credit for his uncle, S. D. Maupin, nor was his uncle trying to get credit. The condition upon which the nephew took charge of his uncle's

affairs, acquiesced in and scrupulously observed by the uncle, was that no further notes should be given.

[3] There is no legal obligation upon a beneficiary in a deed of trust to record it.   He runs the risk of some other creditor securing a lien upon the property conveyed which would take precedence over his lien if the same is secured before his deed of trust is recorded, but where the deed is recorded before the lien is acquired, as in the case at bar, the trust deed takes precedence unless the beneficiary has taken some active steps, before the recordation of his deed, to deceive or mislead a third party into thinking that the grantor still owns the property, and on the faith of this belief becomes a creditor of the grantor.   Merely withholding the deed from record and remaining quiet do not constitute fraud in law.   *Henry* v. *Payne*, 126 Va. 1, 8, 9, 100 S. E. 845.

[4] There is some suggestion in the argument that "Bub" Maupin is estopped to assert his lien of the deed of trust to the exclusion of the Levison judgment on account of the conversation which the trustee in the deed of trust had with Levison in the latter part of January, 1920, before Levison purchased the note from Whitaker and before the deed of trust was recorded.   There were two versions of this conversation.   Levison's was as follows:

"I asked him whether it was in order and whether it would be paid.   He told me that if the note I had bore Mr. S. D. Maupin's signature, it was good; that it was given in connection with the transaction that he, Mr. Wm. G. Maupin, was handling, and that no extension would be asked at maturity, but that it would be paid."

Wm. G. Maupin's version was:

"Levison did call me up, young Mr. Levison, on long distance telephone either that day or the next day, and asked me if I was W. G. Maupin who was handling the

.affairs of Mr. S. D. Maupin. I told him that I was. He described the note to me, the description being the ·description of the note about which the question was asked. He asked me if that was the genuine note of S. D. Maupin, and if there were any defenses to it. I told him that Mr. S. D. Maupin was the maker of the note and that there were no defenses to it. He asked if the note would be paid at maturity. I told him that Mr. Whitaker, the endorser on the note, had advised me that he would pay it at maturity, that Whitaker had made me similar promises regarding a number of· notes ·of Mr. Maupin and had uniformly kept his promise, and that I believed that Whitaker would pay the note when it became due."

In the first place it will be noted that he was talking to Wm. G. Maupin as the attorney for Mr. S. D. Maupin, and he was asking him only about the genuineness of the note and whether or not it would be paid at maturity. He did not ask him anything about the financial worth of S. D. Maupin, or what property he owned, or whether or not there were any encumbrances on his property. But, according to his own testimony, he simply inquired if the note "was in order and whether it would be paid." In Wm. G. Maupin's reply he made no representations whatsoever about S. D. Maupin's financial standing, or about his prop-·erty holdings, or as to whether or not there were any liens on it, but he simply stated that the note was given in connection with a transaction that he, Wm. G. Maupin, was handling, that no extension would be asked at maturity, and that it would be paid.

In our view of the case it makes no difference which was the correct version. The failure of the trustee to volunteer .information could not affect the rights of "Bub" Maupin under the deed of trust, since he had no knowledge of this conversation.

There was no motive on the part of Wm. G. Maupin to assist Whitaker in the sale of this note. S. D. Maupin would not benefit thereby. As a matter of fact, it would have been to the interest of S. D. Maupin for Whitaker to remain the owner of the note rather than for it to get into the hands of a third person, because it was an accommodation note and there was no liability on S. D. Maupin to pay the note to Whitaker.

Wm. G. Maupin's statement—if he did make such a statement—that the note would be paid at maturity, was simply the expression of an opinion and was not the representation of an existing fact. *Dudley* v. *Minor*, 100 Va. 728, 42 S. E. 870.

"Bub" Maupin and Levison & Company were both *bona fide* creditors of S. D. Maupin. Under the facts established by the record they stood on an equal footing, their equities were equal, before they secured liens upon the real estate of their debtor, S. D. Maupin. "Bub" Maupin secured the lien of his deed of trust before Levison & Company secured their judgment lien, and under the law he will prevail.

In view of what has been said we are of opinion that the learned chancellor of the hustings court erred in directing that the deed of trust be set aside, and this court will enter such decree as in our opinion the trial court should have entered, declaring the said deed of trust valid and dismissing the suit with costs.

*Reversed.*