EDWARD C. HEGELER

*v.*

THE FIRST NATIONAL BANK OF PERU.

*Filed at Ottawa June 15, 1889.*

1. FRAUD—*as between creditors—a prior creditor omitting to disclose his claim or his security.* The mere failure of a creditor to disclose the fact that he has been secured by the debtor's notes, with power of attorney to confess judgment, and the creditor failing to enter up judgment for several months after his debt is due, will not constitute a fraud against other persons who may afterwards give the debtor credit on the faith of his apparent solvency. Even if such preferred creditor had knowledge of his debtor's insolvency, he would not be bound to disclose that fact, or the amount due from such debtor.

2. But if the prior creditor, having knowledge of the insolvency of a person, loans him a large sum, taking notes, with a power of attorney for the confession of judgment thereon, as a security, and such creditor at the time agrees to conceal the fact of the loan and the security so given, and allow the debtor to retain the full control of his property, free from any record or known lien, and in pursuance of such agreement does conceal the facts in relation to such indebtedness for nearly a year, with the intention of allowing the debtor new and further credit elsewhere and to defraud other creditors, it seems that such prior creditor would be guilty of a fraud, for which he should be postponed to the rights of other creditors.

3. In this case, a bank loaned an embarrassed or failing corporation a large sum of money, taking its notes due one day after date, secured by a power of attorney authorizing the confession of judgment on the notes at any time thereafter, and retained such notes for nearly a year after their maturity without disclosing to the public the fact of the loan or the existence of the bank's security, during which time the corporation, on the faith of its solvency and property in its use and control, was enabled to, and did, obtain other considerable loans. The bank never agreed to conceal its claim, and there was no evidence tending to prove any acts or declarations of the bank calculated to induce others thereafter to give the company credit: *Held,* that a bill by a subsequent creditor of the company to set aside the judgment in favor of the bank, and a sale thereunder, and postpone its rights until the complainant's debt was first satisfied, was properly dismissed.

4. APPEAL—*what questions to be considered—as to matters waived in the Appellate Court.* The practice of waiving points in the Appellate

Court, even when they properly arise on the errors assigned, and then presenting them to this court on appeal, can not be recognized. The failure of the Appellate Court to reverse for error to which its attention has not been called, and upon which it did not pass, can not be urged for error in this court.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of La Salle county; the Hon. DORRANCE DIBELL, Judge, presiding.

On the 24th of December, 1881, the De Steiger Glass Company made its promissory note to the appellee, for $5200, due ten days after date, with eight per cent interest. Also, on January 10, 1882, its other promissory note, for $35,000, due one day after date, and then executed and delivered its two powers of attorney, and attached the same to said notes, authorizing judgments to be confessed thereon at any time thereafter. On the 22d day of December, 1882, appellee, in pursuance of such powers of attorney, caused a separate judgment to be entered by confession on each of said notes, in its favor, and against·said glass company, one for the sum of $5325, and the other for $35,050. On these judgments executions were regularly issued, and levied on certain real estate situate in the city of La Salle. On September 21, 1882, appellant loaned the said glass company $10,000, and November 20 following, $4500, for each of which sums he took its promissory note, with powers of attorney to confess judgments thereon, and on January 1, 1883, caused judgment to be duly entered in his favor for the sum of $14,500 and costs. Judgments were also rendered about that time against said company, in various amounts, in favor of several different persons, some by confession, and others on process regularly issued.

Appellant having obtained execution on his judgment, and caused the same to be levied on the real estate upon which appellee had previously levied, filed this bill, on the 14th day of April, 1883, to set aside and vacate each of said judgments

in favor of appellee, alleging them to be fraudulent and void as against himself and other creditors of said glass company, and praying that the executions, levies and sales made in pursuance thereof be set aside, and that all the property of said company, including that so levied upon by appellee, be distributed among all of its creditors *pro rata*. Although the bill was filed prior to the sale under appellee's executions, the sale was not restrained, but proceeded regularly, without interruption, and the time of redemption having expired prior to the hearing upon this bill, appellee had received sheriff's deeds for a part of said real estate, and was entitled to deeds for all of it. Pending the bill, a receiver had been appointed by the circuit court of La Salle county, with directions to take charge and control of all the property of said glass company, including that so sold on appellee's executions. On the hearing, the bill was dismissed, and the receiver ordered to surrender possession of said premises to appellee. After the cause had been submitted, the court below permitted appellee to make a substantial amendment to its answer. On appeal to the Appellate Court for the Second District, the decree of the circuit court was affirmed, and appellant now brings the record to this court.

Messrs. BREWER & STRAWN, for the appellant:

The bank took the judgment notes upon which the judgments were entered, and held and concealed the same under circumstances that made its conduct operate as a fraud upon subsequent creditors of the glass company.

A deed not at first fraudulent may become so by being concealed or not pursued, if creditors are thereby induced to give credit to the grantee. *Hildreth* v. *Sands*, 2 Johns. Ch. 48; *Perine* v. *Dunn*, 3 id. 508; Kerr on Fraud and Mistake, 42, 43; *Belcher* v. *Belcher*, 10 Yerg. 121; *Kennedy* v. *Kennedy*, 2 Ala. 571; *Gale* v. *Gale*, 19 Barb. 249; *Scrivener* v. *Scrivener*, 7 B. Mon. 374; *Gill* v. *Griffith*, 2 Md. Ch. 270; *Hilliard* v. *Cagle*, 46 Miss. 309; *Blennerhassett* v. *Sherman*, 105 U. S. 100.

The court erred in permitting the appellee to file an amendment to its answer after the case had been taken under advisement, and also in divesting the receiver of any further control of the property of the glass company.

Mr. G. S. ELDRIDGE, for the appellee:

None of the authorities cited by appellant sustain the position contended for. They are all cases of mortgages, deeds or other conveyances, in which it was held that they were inoperative as liens from the date of their execution, as to creditors who had acquired subsequent liens without notice of the alleged secret liens, and when the acts of the holders of the secret liens had been such as to amount, as against other creditors, to a disavowal of any liens upon, or ownership of, or interest in, the property involved.

No law requires bank or other notes to be recorded or made public, and the bank never concealed the existence of the indebtedness to it. *Field* v. *Ridgely*, 116 Ill. 424.

Hegeler made his loan to the glass company upon the stipulation that he should have the first lien by a mortgage on the property of that company, when the exigency should occur for its execution. The inquiry is suggested, that as Hegeler gave no publicity to this stipulation, did he create a secret lien in his own favor, and thereby aid in giving a fictitious appearance of wealth to the De Steiger Glass Company, and did he thereby commit a legal fraud? It is not here insisted that he did, but according to the theory of appellant's counsel, if their views are correct, it would most certainly appear that he had. If their theory be the correct one, then certainly he has no *status*, in equity, to assail the validity of the bank judgments.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

The sole ground upon which a reversal was asked in the Appellate Court was stated by counsel for appellant in the following language:

"The theory upon which complainant seeks a reversal of the decree below will appear from the following extracts from his bill of complaint, viz.: 'That although the notes upon which said judgments were confessed in favor of the Peru bank were dated anterior to the time when the indebtedness for which said judgments were confessed was contracted, still said notes were kept by said bank in its custody and concealed from the knowledge of complainant, and the judgments thereon were confessed after said glass company became indebted to complainant; that it is inequitable and unjust for said bank to assert a lien upon said premises, under said judgments, as against complainant. Your orator would further represent, that although said judgments in favor of the First National Bank of Peru were not entered up until December 22, 1882, yet said notes both became due in January, 1882, and were each accompanied by power of attorney to confess judgment at any time; that prior to January 10, 1882, the date of the execution of each of said powers of attorney, the De Steiger Glass Company was unable to meet its obligations, and was insolvent, which was then and prior thereto known by said First National Bank of Peru; that said bank had cause for so believing; that just prior thereto said glass company offered to mortgage its property to said bank, but said bank refused, because it would injure the credit of the glass company and prevent it from obtaining elsewhere further credits and loans; that thereupon said bank took from said glass company said notes, and powers of attorney attached thereto, and agreed to conceal the same, and to allow said glass company to retain the full control of the property, free from any recorded or known lien; that in pursuance of such agreement said First National Bank of Peru, with the intention of allowing said glass company to obtain new and future credit elsewhere, and to defraud its creditors, did keep concealed in its possession for over eleven months, and until December 22, 1882, said judgment notes, when it entered judgments thereon and took

11—129 ILL.

out executions and made levies as aforesaid, with the express purpose of defeating the just claims of your orator and other creditors of said glass company incurred during the period of said concealment, and concealed the amount of indebtedness from the glass company to it until December 22, 1882; that your orator advanced $10,000 September 21, 1882, and $4500 November 20, 1882, on the false and fraudulent statements of the De Steiger Glass Company as to its financial condition, and upon the delusive and fictitious credit given it by said First National Bank of Peru in allowing it to retain all its property apparently free from incumbrance, and that had your orator known or suspected the existence of said judgment notes he would have given no credits or loans whatever to said glass company; that such concealment enabled the glass company, under the semblance of being the owner of a large amount of unincumbered real estate and personal property, to deceive and mislead your orator and other persons to give it credit that would otherwise have been withheld, by reason of which said glass company did contract the aforesaid debts to your orator, now remaining wholly unpaid; wherefore your orator avers it is inequitable and unjust for said First National Bank of Peru to be allowed to enforce its said pretended liens to the injury of your orator, and until your orator has been paid in full his aforesaid judgment.'"

The briefs and arguments filed in the Appellate Court are re-filed here as the principal arguments in this court.

It must be admitted, that if the averment that appellee "*agreed to conceal the same, and to allow said glass company to retain the full control of the property free from any record or known lien, and that in pursuance of such agreement it did conceal,*" etc., was stricken out of the bill, it would be demurrable, for want of equity appearing on its face. (*Field et al.* v. *Ridgely et al.* 116 Ill. 424.) There is not a particle of evidence in the record to support that averment, nor is it relied upon, in the argument, as being essential to complainant's cause. On the con-

trary, the argument proceeds throughout upon the proposition that the bank took its notes and held them under *circumstances* that made its conduct operate as a fraud upon others. There is no pretense that there was any agreement to conceal its claim against the glass company, much less that any such agreement was made for the purpose of enabling the company to obtain credit from others. No evidence can be found in the record proving, or tending to prove, acts or declarations on the part of appellee calculated to induce appellant to give credit to the glass company. There is nothing in the bill, and certainly nothing in the evidence, to show that at the time appellee took its notes, and refused to take mortgage security, it did not honestly believe, that, notwithstanding the insolvency of the glass company, it would, if its credit could be maintained, successfully recover from its embarrassment, continue business, and pay all its debts.

The authorities cited in the brief of appellant lay down correct rules and principles of law, but in our view of this case they are wholly inapplicable. We think the bill was properly dismissed.

In the additional brief and argument filed in this court, it is insisted that the circuit court erred in ordering the property in controversy to be turned over to appellee, and in granting it leave to amend its answer after the cause had been submitted. Neither of these points was presented to the Appellate Court for decision. The first is not even raised by the assignment of errors. We do not think the order was erroneous. The leave to amend the answer was clearly within the discretionary power of the chancellor.

We find no error in this record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*