In the

# United States Court of Appeals

## For the Seventh Circuit

---

Nos. 13-1443, 13-1794

UNION COUNTY, ILLINOIS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

MERSCORP, INC., *et al.*,

*Defendants-Appellees*.

---

Appeals from the United States District Court for the
Southern District of Illinois.
No. 3:12-cv-00665-GPM-SCW — **G. Patrick Murphy**, *Judge*.

---

ARGUED SEPTEMBER 18, 2013 — DECIDED NOVEMBER 14, 2013

---

Before BAUER, POSNER, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiffs, an Illinois county and several of its officials, filed a class action suit in an Illinois state court on behalf of all the counties in the state against the mortgage services company MERSCORP Holdings, Inc., and a number of banks that do business with it. The suit alleges that MERSCORP is violating an Illinois statute that, the counties (as we'll call the plaintiffs) contend, requires every mortgage on real property in Illinois to be rec-

orded. The statute specifies that, if it is recorded, it must be recorded in the public-records office of the county in which the property is located. The question is whether, as the counties contend, it *must* be recorded.

The defendants removed the case to federal district court (basing federal subject-matter jurisdiction on diversity of citizenship) under the Class Action Fairness Act. The district judge ruled that Illinois law does not require that mortgages be recorded, and dismissed the suit with prejudice without deciding whether to certify it as a class action.

MERSCORP (we won't need to discuss the bank defendants) operates an online system called MERS (an acronym for "Mortgage Electronic Registration System") for tracking mortgage assignments. If a homeowner obtains a mortgage from bank B, B can register the mortgage on MERS and also assign the mortgage to MERSCORP, which then records it in the county in which the mortgaged property is located, in order to provide notice to subsequent purchasers and creditors of the property.

Although MERSCORP is the mortgagee of record, the assignment of a mortgage to it is not substantive. MERSCORP is not the lender; and as it does not pay the assignor for the assignment it does not become the lender—in fact it has zero financial interest in the mortgage. In a previous decision we described MERSCORP as "a membership organization that records, trades, and forecloses loans on behalf of many lenders, acting for their accounts rather than its own." *Mortgage Electronic Registration Systems, Inc. v. Estrella*, 390 F.3d 522, 524–25 (7th Cir. 2004). The purpose of assigning a mortgage to MERSCORP is merely to enable repeated de facto assignments of the mortgage by successive mortgagees. We call

those assignments "de facto" because MERSCORP remains the official assignee (it prefers to be called the "nominee" of the lender and of the lender's successors and assigns). These "assignments" are not recorded, and so B in our example can transfer the mortgagor's promissory note—the homeowner's debt to the bank—to another financial institution without the transfer being recorded in a public-records office. The MERS process thus facilitates, by streamlining, successive inter-bank sales of mortgages. Often the purpose is to create mortgage-backed securities, which are tradable interests in packages of mortgages and were among the culprits responsible for the financial crisis of 2008.

The counties make many criticisms of MERS. One, which is related to the role it played in the market for mortgage-backed securities, is that by facilitating mortgage transfers that are effectively assignments but are not recorded, MERS makes it difficult for a mortgagor to discover who is servicing his mortgage (collecting the monthly interest on it, for example)—a serious problem when the mortgage has been securitized—and whom therefore he should deal with if he wants to renegotiate the mortgage or challenge its validity. He can ask MERSCORP for the information, but the counties contend that MERSCORP won't tell him—or can't because it often loses loan records. One court has called MERSCORP a "straw man," hiding the identity of the actual mortgage holder by not recording resales of the mortgage. *Landmark National Bank v. Kesler*, 216 P.3d 158, 166–68 (Kan. 2009).

But the counties are not mortgagors complaining that MERSCORP is concealing from them the identity of the holders of the mortgages on their property. The complaint is of an entirely different character. The complainers are coun-

ty governments and county officials claiming that their counties are entitled to recording fees because Illinois law requires that mortgage transfers by MERSCORP be recorded. They contend that these transfers are really assignments and that all assignments of mortgages on property in Illinois must be recorded.

MERSCORP does not take issue (at least in this case) with the recharacterization of these transfers as assignments. It argues, rather, and the district court agreed, that Illinois law does not require that mortgages (whether original or assigned) be recorded. The land recording system exists to provide notice of ownership of real property, or of possession of a lien, such as a mortgage, on such property; recording is not intended to be a source of government income—in effect a tax on assignments or other transfers of mortgages. Recording is optional.

The counties base their claim on section 28 of the Illinois Conveyances Act, which assumed essentially its present form in 1873 (portions of it date back to the 1820s) and is codified as 765 ILCS 5/28 and provides, so far as relates to this case, that

> deeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate in this state, shall be recorded in the county in which such real estate is situated … . No deed, mortgage, assignment of mortgage, or other instrument relating to or affecting the title to real estate in this State may include a provision prohibiting the recording of that instrument … .

The counties argue that the statute can mean only that all mortgages and mortgage assignments must be recorded. They harp on what they insist is the "plain meaning" of the

language that we've quoted. But a moment's reflection will reveal the shallowness of their recourse to "plain meaning," a tired, overused legal phrase. For suppose a department store posts the following notice: "All defective products must be returned to the fifth floor counter for refund." Obviously this is not a command that defective products be returned; the purchaser is free to keep a defective product, throw it out, or give it as a present to his worst friend. There's an implicit "if" in the command: *If* you want to return a product and get a refund, here's where you have to return it. Similarly, section 28 of the Conveyances Act may just mean that if you want to record your property interest you must do so in the county in which the property is located. That is not the statute's "plain meaning" in the sense of an unarguable meaning (though MERSCORP calls it the "plain language" of the statute—and thus we have the unedifying though common spectacle of opposing parties each arguing that its interpretation of statutory or contractual language is unarguable), but in context it's the better meaning.

Notice the second sentence in section 28, prohibiting the parties to a mortgage or other land instrument from including a "no recordation" condition in the instrument. This sentence (added in to the Conveyances Act in 1995) would be superfluous if the law required recordation, for that requirement would automatically make the inclusion of such a prohibition in the instrument unlawful. More important (because superfluity in statutes, as in legal discourse generally, is common), section 30 of the Conveyances Act, 765 ILCS 5/30, provides that "all deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing

the same for record, and not before, as to all creditors and subsequent purchasers, without notice … ." The phrase "authorized to be recorded" implies that some land instruments *can* be recorded but don't have to be.

Most important, the purpose of recordation has never been understood to be to supplement property taxes by making every landowner, mortgagee, etc. pay a fee for a service he doesn't want. The purpose is to protect the property owner or mortgage holder against claims to the property interest asserted in the deed, mortgage, or other instrument. Recording is a valuable service, provided usually for a modest fee—but provided only to those who think the service worth the fee.

So even as an original matter, and without regard to authoritative interpretations of the Illinois statute by Illinois courts, MERSCORP has the better of the interpretive dispute. But in addition, in cases decided more than a century ago the Supreme Court of Illinois made clear that recording is not mandatory. "We are aware of no principle, outside of self-interest and prudence in business, that requires the holder of a mortgage to put it on record at any particular time. By not doing so promptly he runs the risk of having it postponed to prior liens, and even of losing the benefit of it altogether." *Field v. Ridgeley*, 6 N.E. 156, 159 (Ill. 1886), followed in *Haas v. Sternbach*, 41 N.E. 51, 54 (Ill. 1894). The supreme court has not revisited the issue. A number of decisions by the Illinois Appellate Court, however, assume or repeat the interpretation adopted in those early supreme court decisions. See, e.g., *Federal National Mortgage Ass'n v. Kuipers*, 732 N.E.2d 723, 726 (Ill. App. 2000); *Lindley v. English*, 89 Ill. App. 538, 539 (1899), affirmed, 62 N.E. 522 (Ill.

1901); *W.O. Tyler Paper Co. v. Orcutt-Killick Lithographing Co.*, 35 Ill. App. 500, 502 (1890); *Hegeler v. First National Bank*, 28 Ill. App. 112, 118–19 (1888), affirmed, 21 N.E. 812 (Ill. 1889); see also *Macon County v. MERSCORP, Inc.*, No. 12-CV-2214, 2013 WL 4838850, at *6–7 (C.D. Ill. Sept. 10, 2013). Consistent with *Field* and *Haas*, and contrary to the counties' position in this case, Illinois courts also uphold the validity of unrecorded mortgage assignments, deeds, or related instruments. See, e.g., *Federal National Mortgage Ass'n v. Kuipers*, *supra*, 732 N.E.2d at 725, 730; *Schaumburg State Bank v. Bank of Wheaton*, 555 N.E.2d 48, 51–52 (Ill. App. 1990); *Dana Point Condominium Ass'n v. Keystone Service Co.*, 491 N.E.2d 63, 67 (Ill. App. 1986). Obviously they wouldn't do this if failure to record violated Illinois law.

It is also significant that, to our knowledge, until this case (and a case filed contemporaneously with it and discussed at the end of this opinion), no Illinois county official had taken the position that recording is mandatory. We are left to speculate that it is the parlous financial condition of Illinois state and local government that has impelled these officials in desperation to seek to overturn a long-established understanding of Illinois law.

The counties invite our attention to the statement in *Farmers State Bank v. Neese*, 665 N.E.2d 534, 539 (Ill. App. 1996), that "section 28 of the Conveyances Act requires all 'instruments relating to or affecting the title to real estate in this state' to be recorded." But on the same page the court explains that "parties which receive interests through such instruments must record *to be protected against third parties*" (emphasis added). So this is another example of the need to understand the context of a flat statement (the law "requires

'all instruments' … to be recorded") in order to understand the statement's meaning.

*Haas* had left open the possibility that failure to disclose a debt could operate as a fraud, 41 N.E. at 54–55, but our counties do not claim that MERSCORP's failure to record transfers of mortgage indebtedness is fraudulent. They are critical of MERS because the system makes life hard for the mortgagor. But their appeal claims only that MERSCORP is violating section 28 of the Conveyances Act by failing to record its transfer of mortgage debts, thus depriving the county governments of recording fees. That claim—the only one before us—has no merit.

Doubtless fearing that we would so rule—that we would deem the state supreme court's interpretation valid despite its antiquity—the counties ask us if not disposed to agree with their interpretation to certify the question to that court. We can't do that. Rule 20(a) of the Supreme Court of Illinois authorizes that court to answer a question certified to it by this court only if "there are no controlling precedents in the decisions of" the Illinois supreme court; and there are two—*Field* and *Haas*. Anyway we don't see the point of bothering the state supreme court with the question. For one thing the court's answer wouldn't end this lawsuit, because the district court, having satisfied itself that the case has no merit, didn't rule on several other defenses. For another thing, in May of last year St. Clair County, another Illinois county (and hence a member of the class in this suit), filed a materially identical suit in an Illinois state court against MERSCORP—and since it was not removed to federal court, whoever loses that case will be able to appeal to the Illinois

Appellate Court, and the loser in *that* court can ask the Supreme Court of Illinois to accept a further appeal.

In July of this year the trial court in the *St. Clair County* case denied the defendants' motion to dismiss, ruling that section 28 indeed requires recordation of all mortgages. *St. Clair County v. Mortgage Electronic Registration Systems, Inc.*, No. 12-L-267 (St. Clair County Circuit Court, July 12, 2013). The court's opinion, which adopted the County's proposed opinion verbatim, typos and all, is not persuasive. But it sets the stage for an eventual appeal that would give the state supreme court a shot at the issue. The counties argue that our case will get to the top of the Illinois court system faster than St. Clair County's case, if we certify. But that's speculation. Both cases were filed within months of each other last year. And it's quite likely that the Supreme Court of Illinois would hold off on answering our certified question until the St. Clair County case reached it. Moreover, the supreme court is not required to answer, and does not always agree to answer, a certified question that we put to it. Should the supreme court decide in the St. Clair County case that registration of mortgages in Illinois is mandatory, its decision will supersede ours. But the court may find our decision helpful, whichever way it decides, and this is another reason for our offering an answer to the question rather than certifying it.

AFFIRMED.