In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-3251

MACON COUNTY, ILLINOIS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

MERSCORP, INC., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:12-cv-02214-MPM-DGB — **Michael P. McCuskey**, *Judge*.

SUBMITTED JANUARY 13, 2014 — DECIDED JANUARY 30, 2014

Before BAUER, POSNER, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. The district court dismissed the complaint in this suit on grounds similar to those of our recent decision in *Union County v. MERSCORP, Inc.*, 735 F.3d 730 (7th Cir. 2013), and the plaintiff, another Illinois county (we can ignore its coplaintiff, the County Recorder of Deeds), has appealed. The defendants, who largely overlap the defendants in the *Union County* suit, have asked us to affirm the dismissal of the present suit summarily because our

*Union County* decision requires the dismissal so clearly that briefing the appeal in this case would be a waste of time and money. If they are right, summary affirmance is indeed the proper course. *United States v. Fortner*, 455 F.3d 752, 754 (7th Cir. 2006).

The claim in the previous suit was that the mortgage services company MERSCORP Holdings, Inc., and a number of banks that do business with it, were violating an Illinois statute that, Union County contended, requires every mortgage on real property in Illinois to be recorded. The statute specifies that, if a mortgage is recorded, it must be recorded in the public-records office of the county in which the property is located. 765 ILCS § 128. The question was whether, as Union County contended, Illinois law *requires* that a mortgage be recorded.

MERSCORP operates an online system called MERS (an acronym for "Mortgage Electronic Registration System") for tracking assignments of mortgage loans. A bank that obtains a mortgage can register it on MERS and also assign the mortgage to MERSCORP, which then records it, in the county in which the mortgaged property is located, in order to provide notice to subsequent purchasers and creditors of the property. But although MERSCORP is the mortgagee of record, the assignment of a mortgage to it is not substantive. MERSCORP is not the lender; and as it does not pay the assignor for the assignment of the mortgage to it, it does not become the lender—in fact it has zero financial interest in the mortgage. The purpose of assigning a mortgage to MERSCORP is to enable repeated assignments of the mortgagor's promissory note (that is, his contractual commitment to repay the loan) to successive lenders (banks usually).

These assignments are not recorded in the county land registries because they are not assignments of mortgages or other property interests. So the first assignee can assign the mortgagor's promissory note to another financial institution without the assignment being recorded in a public-records office, and the second assignee to a third, and so on. The MERS process thus facilitates, by streamlining, successive interbank sales of mortgage notes.

Only MERSCORP pays the recording fee, because only MERSCORP records a mortgage that it obtains by assignment. The subsequent "assignees" do not have a mortgage to record because they are assignees not of the mortgage held by MERSCORP—the property interest that secures the homeowner's debt—but just of the homeowner's promissory note. The note creates the debt secured by the mortgage, but the mortgage is owned by MERSCORP by virtue of the assignment of the mortgage to it, and not by the note holder.

Union County had argued that Illinois counties are entitled to recording fees from MERSCORP as the agent of its assignees (or from the banks that are MERSCORP's assignees) because Illinois law requires that assignments of mortgages be recorded. MERSCORP didn't waste much time pointing out that the assignments in question are not mortgage assignments; all it needed to do was point out that Illinois law does not require that mortgages (whether original or assigned) be recorded. The land recording system exists merely to provide notice of ownership of real property, or of possession of a lien, such as a mortgage, on such property, for the benefit of the owner or the lien holder. Recording is therefore optional. We so held in *Union County*, see 735 F.3d

at 733–34, as did the district court in the present case (decided before our decision in *Union County*).

Macon County does not challenge the result in *Union County*—it disclaims any reliance on the proposition that mortgages must be recorded. It argues rather that the defendants' refusing to pay recording fees when the promissory notes are transferred results in the defendants' being unjustly enriched, in violation of the common law of Illinois. In full, its argument is that

> defendants have been unjustly enriched through the use of the MERS system to claim the protection of recording—protection that is apparently valuable, because they used to pay for it—but are able to do so only by naming MERS as a placeholder mortgagee and through the use of the legal fiction that mortgage transfers are not assignments. Plaintiff alleges that if MERS did not exist, the mortgages would be assigned—not "transferred" on MERS' confidential electronic registry; the assignees would record the assignments through the county offices to ensure they had first-lien mortgages and the other protections provided through recordation; and the banks would pay the associated fees. Because Defendants are unwilling to pay these fees, they created MERS to serve as a place-holder, which games the system and artificially freezes the chain of title with MERS, despite numerous "transfers" of the underlying note. It is the use of this system **as a whole** that Plaintiff alleges is unjust because Defendants are obtaining the protection that recording affords without paying the fees they would otherwise owe to Plaintiff in order to obtain that protection [emphasis in original].

The argument is difficult to understand. Since the banks are not mortgagees, by assignment or otherwise, they couldn't record the mortgages that secure the mortgagors' promissory notes if they wanted to. So in effect Macon County wants MERS abolished. But MERS is not an illegal substitute for protecting mortgage loans in the conventional way, which would be for MERSCORP to assign not just the mortgagor's promissory note to a bank but also the mortgage itself, in which event the assignee would have to pay a recording fee on if it decided to record its newly acquired mortgage interest. Macon County argues not that MERS is illegal, but that it's "unjust" because it deprives the County of revenues it would otherwise receive. But that's equivalent to saying that lawfully underselling a competitor is "unjust" because it deprives the competitor of revenues he would otherwise enjoy. Competition is not a tort at common law. A firm is not required to charge a price for its goods or services that enables a competitor to prosper. No more are MERSCORP and the banking industry required to adopt a system of mortgage protection that generates revenues for a state or local government—as the Eighth Circuit held last month in a case almost identical to this one. See *Brown v. Mortgage Electronic Registration Systems, Inc.*, 738 F.3d 926, 935 (8th Cir. 2013).

We acknowledged in *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516–19 (7th Cir. 2011), uncertainty whether under Illinois law proof of unjust enrichment requires proving that the defendant has been enriched at the expense of the plaintiff by having committed a tort, breach of contract, or other unlawful act, or instead whether it is enough that it would be "unjust" to allow the defendant to retain the benefit that he obtained at the plaintiff's expense. There is no suggestion

that the defendants in this case have committed an unlawful act, only that it is "unjust" that they should retain a benefit provided them by their circumvention of a method of mortgage protection that would yield revenues for Macon County. But they are not deriving any benefit from the County's method, the recording system, beyond the recording of the mortgage assignments to MERSCORP—for which MERSCORP pays the County's fee. Rather, the defendants are bypassing the County's recording system, as they are entitled to do because there is no requirement that either the initial granting of a mortgage or its assignment be recorded, let alone that the assignment of a promissory note be recorded. See *Brown v. Mortgage Electronic Registration Systems, Inc.*, *supra*, 738 F.3d at 935. If Macon County is right, a taxpayer who takes lawful advantage of a loophole in the Internal Revenue Code has been unjustly enriched and must disgorge his tax savings. No one believes that.

The two theories of unjust enrichment—the one requiring an unlawful act, the other requiring only a finding of "injustice"—merge in cases which say that unjust enrichment is a remedy for a breach of a contract implied in law. See, e.g., *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992); *Nesby v. Country Mutual Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. 2004). To posit an implied contract between MERSCORP and the banks on one side and the County recording office on the other would be frivolous.

We offered still another way to think about unjust enrichment in *ConFold Pacific, Inc. v. Polaris Industries, Inc.*, 433 F.3d 952, 957–58 (7th Cir. 2006), where we said that the term "has two referents, a remedial and a substantive. The remedial [referent] is to a situation in which a tort plaintiff asks

not for the damages he has sustained but instead for the profit that the defendant obtained from the wrongful act." That has no relevance to this case, of course. "In its substantive sense, unjust enrichment … refers primarily to situations in which either the defendant has received something that of rights belongs to the plaintiff (for example, he received it by mistake—or he stole it), or the plaintiff had rendered a service to the defendant in circumstances in which one would reasonably expect to be paid (and the defendant refused to pay) though for a good reason there was no contract." There is no way to fit the plaintiff's claim in this case into this capacious definition; the defendants obtained nothing to which Macon County had a right.

Suppose a man rents a movie from Netflix, and his whole family—his wife and their four children—watches it. The man pays; the other five, though they enjoy the movie, watch it for free. It is the same here. MERS records the mortgage, and the assignees of the promissory note secured by the mortgage benefit from that recordation but pay nothing to the recording office. In neither case are the free riders obligated to pay the provider of the service from which they benefit; they are *lawful* free riders.

Like *Mather v. Village of Mundelein*, 869 F.2d 356, 357 (7th Cir. 1989) (per curiam), this is a case in which "motions papers, in conjunction with the record and the district court's opinion … show the appropriate disposition [of the appeal] with sufficient clarity that a call for briefs would be nothing but an invitation for the parties to waste their money and the court's time." The judgment dismissing this suit is

AFFIRMED.