[Cite as *State ex rel. Flaiz v. Merscorp, Inc.*, 2017-Ohio-7126.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. JAMES R. FLAIZ, | : | **O P I N I O N** |
| PROSECUTING ATTORNEY OF | | |
| GEAUGA COUNTY, OHIO, et al., | : | |
| | | **CASE NO.  2016-G-0079** |
| Plaintiffs-Appellants, | : | |
| | | |
| - vs - | : | |
| | | |
| MERSCORP, INC., et al., | : | |
| | | |
| Defendants-Appellees. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 11 M 001087.

Judgment: Affirmed.


*James R. Flaiz,* Geauga County Prosecutor; *Bridey Matheney* and *Katherine A. Jacob, Assistant Prosecutors,* Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellant, James R. Flaiz, Prosecuting Attorney of Geauga County, Ohio).

*Jeffrey S. Goldenberg,* Goldenberg Schneider, LPA, 1 West Fourth Street, 18th Floor, Cincinnati, OH  45202; *Christian A. Jenkins,* Minnillo & Jenkins Co., LPA, 2712 Observatory Avenue, Cincinnati, OH  45208; and *Patrick J. Perotti,* Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH  44077 (For Plaintiff-Appellant, Jessica Little, Prosecuting Attorney of Brown County, Ohio).

*Jeremy Gilman* and *Kari B. Consiglio,* Benesch, Friedlander, Coplan & Aronoff, LLP, 200 Public Square, #2300, Cleveland, OH  44114; and *Robert M. Brochin,* Morgan, Lewis & Bockius, LLP, 200 South Biscayne Boulevard, Suite 5300, Miami, FL 33131 (For Defendants-Appellees, Merscorp, Inc., and Mortgage Electronic Registration System, Inc.).

*Nelson M. Reid* and *Daniel C. Gibson,* Bricker & Eckler, L.L.P., 100 South Third Street, Columbus, OH  43215; and *Mary Beth Hogan,* Debevoise & Plimpton, LLP, 919 Third Avenue, New York, NY  10022 (For Defendant-Appellee, JP Morgan Chase Bank,

N.A.).

*Dale H. Markowitz* and *Todd C. Hicks,* Thrasher, Dinsmore & Dolan, 100 Seventh Avenue, #150, Chardon, OH 44024 (For Defendant-Appellee, Home Savings & Loan of Youngstown).

*Thomas M. Hefferon* and *Joseph F. Yenouskas,* Goodwin Procter, 901 New York Avenue, N.W., Washington, DC 20001; and *Bryan T. Kostura* and *Barbara F. Yaksic,* McGlinchey Stafford, PLLC, 25550 Chagrin Boulevard, Suite 406, Cleveland, OH 44122 (For Defendants-Appellees, Bank of America Corporation; Bank of America, N.A., Individually and as Successor-By-Merger to Lasalle Bank National Association; CCO Mortgage Corporation; RBS Citizens, N.A.; RBS Securities, Inc.; and Everbank).

*Amanda Martinsek* and *Marquettes D. Robinson,* Thacker Robinson Zinz, LPA, 2330 One Cleveland Center, 1375 East Ninth Street, Cleveland, OH 44114; and *Thomas Panoff* and *Lucia Nale,* Mayer Brown, LLP, 71 South Wacker Drive, Chicago, IL 60606 (For Defendants-Appellees, Citigroup, Inc.; Citibank, N.A.; and Citimortgage, Inc., Individually and as Successor-By-Merger to Principal Residential Mortgage, Inc.).

*Hugh E. McKay,* Porter, Wright, Morris & Arthur LLP, 950 Main Ave., Suite 500, Cleveland, OH 44113 (For Defendant-Appellee, Deutsche Bank National Trust Company).

*Daniel R. Warren* and *Brett A. Wall,* Baker & Hostetler, L.L.P., 3200 PNC Center, 1900 East Ninth Street, Cleveland, OH 44114; and *Patrick T. Lewis,* Baker & Hostetler, L.L.P., 3200 National City Center, 1900 East Ninth Street, Cleveland, OH 44114 (For Defendants-Appellees, Fifth Third Bank; The Huntington National Bank, N.A.; and Keybank National Association).

*Thomas J. Lee, Stephen M. O'Bryan* and *William S. Dornette,* Taft, Stettinius & Hollister, L.L.P., 3500 BP Tower, 200 Public Square, Cleveland, OH 44114; and *R. Bruce Allensworth, Brian M. Forbes* and *Ryan Tosi,* K&L Gates, LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111 (For Defendants-Appellees, Goldman Sachs Mortgage Company and GS Mortgage Securities Corp.).

*David A. Wallace,* Carpenter Lipps & Leland, LLP, 280 Plaza, Suite 1300, 280 North High Street, Columbus, OH 43215; and *Phillip R. Perdew,* Locke Lord LLP, 111 South Wacker Drive, Chicago, IL 60606 (For Defendants-Appellees, GMAC Mortgage LLC and U.S. Bank National Association).

*William D. Kloss, Jr.,* and *Marcel C. Duhamel,* Vorys, Sater, Seymour and Pease, L.L.P., 200 Public Square, Ste. 1400, Cleveland, OH 44114 (For Defendant-Appellee, Corinthian Mortgage Corporation).

*Joseph A. Castrodale,* Benesch Friedlander Coplan & Arnoff, LLP, 200 Public Square, Suite 2300, Cleveland, OH 44114(For Defendant-Appellee, HSBC Bank, U.S.A., N.A.).

2

*Anthony J. Coyne* and *Michael P. Quinlan,* Mansour, Gavin, Gerlack & Manos Co., L.P.A., 1001 Lakeside Ave., Suite 1400, Cleveland, OH 44114; and *Michael H. Carpenter, Katheryn M. Lloyd* and *Tyler K. Ibom,* Carpenter Lipps & Leland, LLP, 280 Plaza, Suite 1300, 280 North High Street, Columbus, OH 43215 (For Defendant-Appellee, Nationwide Advantage Mortgage Company).

*Bryan T. Kostura* and *Barbara F. Yaksic,* McGlinchey Stafford, PLLC, 25550 Chagrin Boulevard, Suite 406, Cleveland, OH 44122 (For Defendants-Appellees, Suntrust Mortgage, Inc., and Everhome Mortgage Company).

*Stephen D. Jones,* Roetzel & Andress, 155 East Broad Street, 12th Floor, Columbus, OH 43215 (For Defendant-Appellee, United Guaranty Corporation).

*Scott A. King* and *Terry W. Posey, Jr.,* Thompson Hine, LLP, Austin Landing 1, 10050 Innovation Drive, Suite 400, Dayton, OH 45342 (For Defendant-Appellee, Wells Fargo Bank, N.A., Individually and as Successor-By-Merger to Norwest Bank, N.A. and Wells Fargo Bank of Minnesota, N.A.).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellants, James R. Flaiz, et al., appeal from the judgment of the Geauga County Court of Common Pleas dismissing their complaint, filed against appellees, MERSCORP, Inc., et al., for failure to state a claim upon which relief can be granted. At issue is whether appellants' complaint was sufficient to state a claim for damages in unpaid filing fees due to appellees' failure to record numerous mortgages and mortgage assignments in the county recorder's official records where, appellants maintain, Ohio imposes a statutory obligation on mortgagees and assignees to do so. For the reasons discussed in this opinion, we affirm the judgment of the trial court, but for reasons other than those advanced by the trial court.

{¶2} On October 13, 2011, Geauga County, Ohio and Brown County, Ohio filed suit against appellees, MERSCORP, Inc., Mortgage Electronic Registration System, Inc. (collectively "MERS," a national electronic registry system for mortgage loans), and

3

numerous banks and mortgage companies. The actions were brought under Civ.R. 23 as a class action on behalf of Ohio's 88 counties, alleging appellees violated Ohio law by failing to record assignments in Ohio county recorders' offices when they assigned mortgages as part of their securitization process, thereby avoiding Ohio's alleged mandatory recording statutes. Appellants asserted that appellees' actions deprived Ohioans of the benefit of a complete and accurate record of title on the subject properties and, by implication, allowed them to avoid the costs associated with the purportedly mandatory filing statutes.

{¶3} The Brown County case was ultimately dismissed and Geauga County amended its compliant to add Brown County as a plaintiff in the underlying matter. Appellants later filed their second amended class action complaint, alleging appellees violated Ohio statutes mandating that mortgages and mortgage assignments be recorded pursuant to R.C. 5301.25 and R.C. 5301.32. The second amended complaint additionally stated claims for unjust enrichment, civil conspiracy, and public nuisance.

{¶4} In the second amended complaint, appellants alleged that appellees established MERS, a private registry, in order to save money and generate rapid mortgage-backed securities by avoiding public recordation. Appellants asserted MERS members are approximately 5,600 banks and mortgage companies who originate mortgages and participate in the securitization process. They claimed MERS does not originate, assign, service, or invest in mortgage loans. Instead, they allege MERS is a private recording system through which its members originate mortgages and keep track of the assignments between various entities involved in the securitization process. Appellants contended MERS members designate MERS as the mortgagee, nominee,

4

beneficiary on the mortgages they originate, or by having members record an assignment of their mortgage to MERS, even though MERS is not the actual owner of the mortgage. MERS members then assign their mortgages to other MERS members during the securitization process by preparing and executing actual assignments; according to appellants, MERS affords appellees the ability to continue this process without utilizing Ohio's recording laws. Appellants alleged that appellees' use of MERS has directly caused public land records to be incomplete and inaccurate and has permitted appellees to avoid paying the requisite filing fees.

{¶5} On November 2, 2012, appellees jointly moved the trial court to dismiss appellants' second amended complaint. In their motion, appellees asserted the trial court should dismiss appellants' complaint because the Ohio General Assembly did not create an express private cause of action to enforce statutory provisions concerning mortgage assignments. Appellees further argued the complaint should be dismissed, as a matter of law, because the relevant statutes do not create an obligation to file the instruments in question; finally, appellees argued each of appellants' individual causes of action failed to state a claim upon which relief could be granted.

{¶6} Appellants opposed the motion, arguing they had standing and a right to pursue their claims, pursuant to R.C. 309.12, which authorizes a prosecuting attorney to file suit when "money is due the county." They further claimed they were entitled to relief because the recording statutes at issue, R.C. 5301.25 and R.C. 5301.32, mandate, by use of the term "shall," that all mortgages and assignments be recorded in the county recorder's office. Finally, they maintained they had alleged sufficient facts to state claims upon which relief could be premised.

5

{¶7} Appellees filed a reply to appellants' memorandum in opposition, asserting R.C. 309.12 was insufficient to create a private cause of action under the relevant recording statutes because it applies only when there is a fixed and settled monetary obligation owed the county. Appellees argued that because they had no statutory obligation to file the instruments with the recorder's office, any money allegedly owed was potential and not a settled obligation or liability.

{¶8} On May 17, 2016, the trial court issued its judgment granting appellees' motion to dismiss. In rendering its decision, the court analyzed the language of both R.C. 5301.25 and R.C. 5301.32. The former provides, in relevant part:

{¶9} (A) All deeds, land contracts referred to in division (A)(21) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the Revised Code, *shall be recorded in the office of the county recorder of the county in which the premises are situated*. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument. (Emphasis added.)

{¶10} R.C. 5301.32 provides, in relevant part:

{¶11} A mortgage may be assigned or partially released by a separate instrument of assignment or partial release, acknowledged as provided by section 5301.01 of the Revised Code. The separate instrument of assignment or partial release *shall be recorded in the county recorder's official records*. The county recorder shall be entitled to charge the fee for that recording as provided by section 317.32 of the Revised Code for recording deeds. (Emphasis added.)

{¶12} The trial court acknowledged that the foregoing statutes utilized the term "shall," typically denoting a mandatory obligation. In this situation, however, the court observed the recording statutes are permissive because they merely provide a

6

mechanism by which property owners, mortgagors and mortgagees, as well as assignors and assignees may record deeds, mortgages, and assignments to establish priority of lien interests. The court maintained that had the General Assembly intended to impose a mandatory duty to record mortgages and assignments, it was required to state (1) who must record the mortgage or assignment; and (2) when the instruments must be recorded. Because neither statute prescribed these conditions *and* because neither statute imposes a penalty upon an individual who fails to comply, the court concluded they cannot impose a duty to record on a mortgagor/mortgagee or assignor/assignee.

{¶13} The trial court also emphasized:

{¶14} Mortgagees and assignees have very strong reasons to record mortgages and mortgage assignments; the recording of those instruments provides notice and establishes at least the presumption of priority. It would seem that only a foolhardy mortgage assignee would choose not to record a mortgage assignment with the County Recorder and run the risk of another entity filing a subsequent mortgage assignment and claiming priority. And yet, that is exactly what the Defendants have chosen to do with the MERS system. Without giving too much credit to financial institutions that have been substantially responsible for the recent recession, those financial institutions have chosen the benefits of the MERS system over the protections of the public recording statutes. The laws of the State of Ohio as presently constituted permit those financial institutions to make that choice.

{¶15} The court therefore dismissed appellants' complaint and this appeal follows. Appellants assign the following as error:

{¶16} "The trial court erred in granting defendants' joint motion to dismiss the plaintiffs' second amended complaint for failure to state a claim upon which relief may be granted."

{¶17} An appellate court reviews a judgment granting a Civ.R. 12(B)(6) motion to dismiss de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶5. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). A trial court presumes all factual allegations in the complaint are true and must make all reasonable inferences in favor of the non-moving party. *Perez v. Cleveland*, 66 Ohio St.3d 397, 399 (1993). "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991).

{¶18} Appellants first argue the trial court erred in granting appellees' motion because, in doing so, it ignored the plain language of R.C. 5301.25 and R.C. 5301.32 providing that recordation of mortgage assignments is mandatory.

{¶19} "When interpreting a statute, a court's paramount concern is legislative intent." *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife,* 144 Ohio St.3d 278, 2015-Ohio-3731, ¶12. "'To discern legislative intent, we first consider the statutory language, reading all words and phrases in context and in accordance with rules of grammar and common usage.'" *See Holland v. Gas Ents. Co.,* 4th Dist. Washington No. 14CA35, 2015-Ohio-2527, ¶14, quoting *Ohio Neighborhood Finance, Inc. v. Scott,* 139 Ohio St.3d 536, 2014-Ohio-2440, ¶22, citing R.C. 1.42. "We apply the statute as written * * *, and we refrain from adding or deleting words when the statute's meaning is clear and unambiguous." *Risner* at ¶12.

8

{¶20} R.C. 5301.25 provides, in pertinent part: "All deeds, land contracts * * * and instruments of writing executed for the conveyance or encumbrance of lands, tenements, or hereditaments * * * *shall be recorded* in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument." (Emphasis added.)

{¶21} R.C. 5301.32 provides, in pertinent part: "A mortgage may be assigned or partially released by a separate instrument of assignment or partial release * * *. The separate instrument of assignment or partial release *shall be recorded* in the county recorder's official records."

{¶22} Appellants assert the General Assembly selected the words "shall be recorded" in both statutes as a mandate; namely, to require the recordation of all mortgages or assignments in the county recorder's office. Appellants maintain the plain language is unambiguous and indicative of a clear and unequivocal intent that the term "shall" be construed as a mandatory declaration that such instruments be recorded as provided by the statutes. While we do not disagree that the term shall is indicative of a mandate, the term must be understood in proper context.

{¶23} "The purpose of the recording statutes is to put other lien holders on notice and to prioritize the liens." *GMAC Mtge. Corp. v. McElroy,* 5th Dist. Stark No. 2004-CA-00380, 2005-Ohio-2837, ¶16; *see also HSBC Mort. Svc., Inc. v. McGuire*, 7th Dist. Columbiana No. 07 CO 44, 2008-Ohio-6586, ¶18; *Holstein v. Crescent Communities, Inc.,* 10th Dist. Franklin No. 02AP-1241, 2003-Ohio-4760, ¶23 ("The main

9

purpose of the recording is to establish priority among creditors and bona fide purchasers.") The statutes in question are consequently intended to protect existing lien holders seeking to give notice of their secured status as well as potential purchasers and creditors interested in the existence of prior liens. If, therefore, mortgagees and assignees do not wish to protect themselves and are "satisfied with the security afforded by the mortgages [or assignments] unrecorded, there [is] no necessity for recording them." *Stewart v. Hopkins*, 30 Ohio St. 502, 526-527 (1876).

{¶24} In light of the statutory purpose, we maintain R.C. 5301.25 and R.C. 5301.32 do not set forth a universal command that all mortgages and assignments be recorded. Instead, they merely direct that liens "shall be recorded" in a specific place, or else the holder risks losing his, her, or its interests in the property to a bona fide purchaser or other party who may not be on notice of the mortgagee's or assignee's secured status. Thus, the "shall be recorded" language, when read in proper context, indicates *not* that every mortgage or assignment must be recorded, but only that such instruments must be recorded in the county where the property is located in order to preserve the lien holder's rights against others who would otherwise lack notice of the lien.

{¶25} Although the instant issue has not been broached in Ohio, various federal courts have adopted the foregoing interpretation of recording statutes with substantially similar language in similar cases brought against MERS and its members. In *Union County, Illinois v. MERSCORP, Inc.*, 735 F.3d 730 (7th Cir.2013), the Seventh Circuit Court of Appeals interpreted an Illinois statute, which contained a materially similar

10

directive as the statutes at issue in this matter.[1]  The court held that the phrase "shall be recorded" did not create a mandatory duty to record.  The court observed:

> **{¶26}** [A] moment's reflection will reveal the shallowness of [the counties'] recourse to "plain meaning," a tired, overused legal phrase. For suppose a department store posts the following notice: "All defective products must be returned to the fifth floor counter for refund." Obviously this is not a command that defective products be returned; the purchaser is free to keep a defective product, throw it out, or give it as a present to his worst friend. There's an implicit "if" in the command: *If* you want to return a product and get a refund, here's where you have to return it. Similarly, section 28 of the Conveyances Act may just mean that if you want to record your property interest you must do so in the county in which the property is located. (Emphasis sic.) *Union County*, at 733.

**{¶27}** The court went on to observe that "the purpose of recordation has never been understood to supplement property taxes by making every landowner, mortgagee, etc.[,] pay a fee for a service he doesn't want * * *. Recording is a valuable service, provided usually for a modest fee - but provided only to those who think the service worth the fee." *Id.* at 733–34.

**{¶28}** Likewise, in *Montgomery Co., Pennsylvania v. MERSCORP, Inc.*, 795 F.3d 372 (3d Cir.2015), the Third Circuit Court of Appeals, following the reasoning set forth in *Union County*, concluded Pennsylania's recording statute, 21 Pa. Stat. Sec 351, which is also materially identical to Ohio's statutes, imposed no duty to record all land conveyances.  Moreover, the Eighth Circuit held, in *County of Ramsey v. MERSCORP Holdings, Inc.,* 776 F.3d 947 (8th Cir.2014), that Minnesota's recording statute, also nearly identical to Pennsylvania's and Ohio's law, imposed no duty to record mortgage assignments. Finally, in *Harris Co., Tex. v. MERSCORP, Inc.,* 791 F.3d 545, 553–57

---

1.  765 ILCS 5/28, Illinois statutes governing "Recording Instruments, Prohibitions," provides, in relevant part: "Deeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate in this state, shall be recorded in the county in which such real estate is situated * * *."

(5th Cir.2015), the Fifth Circuit held the Texas law, providing that in order to "release, transfer, assign, or take another action relating to an instrument that is filed", a person "must" file another instrument relating to the action in the same manner, imposes no duty to record.

{¶29} In light of the foregoing, we hold neither R.C. 5301.25 nor R.C. 5301.32 impose a duty to record mortgages or assignments. We recognize, however, the trial court found that recordation was not mandatory because the subject statutes failed to state who must record the document and when it shall be recorded. Implicit in the recording statutes at issue is the recognition that the mortgagee or the assignee would be the party to record the instrument because recordation functions to protect these parties. To wit, if the purpose of the recording statute is to give notice to the public of liens and, as a result, protect and prioritize the lien holder, it follows the lien holder would be the individual who has the burden of filing, if it chooses to enjoy the security of public filing. Moreover, it also follows that a mortgagee or assignee who desires the protection and security of recordation would file the respective lien as efficiently as possible to obtain the statutory protections that result from placing the public on notice of its interest. As a result, we find the trial court's rationale in dismissing appellants' complaint to be wanting; because, however, we conclude the language, purpose, and context of the statutes under consideration demonstrate appellees were not obligated to record the instruments, we agree with the trial court's conclusion that appellants have failed to state a claim upon which relief could be granted.

{¶30} One final point deserves attention. Appellants claim the trial court erred in concluding they did not have standing to bring the underlying lawsuit. They premise

12

their argument upon R.C. 309.12, which provides the county prosecutor "upon being satisfied that funds of the county * * * have been illegally drawn or withheld from the county treasury * * * or that money is due the county * * * may, by civil action in the name of the state, apply to a court of competent jurisdiction, * * * recover such money as is due the county." If, however, appellees are not obligated to record the instruments under the statutes at issue, the county is not entitled to filing fees. Accordingly, the county is not due money. Hence, regardless of the prosecutor's subjective "satisfaction" that money was "due the county," the county is not entitled to fees as a matter of law. Owing to our substantive analysis above, we additionally hold R.C. 309.12 does not confer standing on appellants to bring suit in this instance. Appellants' remaining issues, relating to the trial court's dismissal of their unjust enrichment, civil conspiracy, and public nuisance claims are all based on the entitlement to fees and are therefore moot and without merit.

{¶31} Appellants' assignment of error is not well taken.

{¶32} For the reasons discussed in this opinion, the judgment of the Geauga County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J., concurs with a Concurring Opinion,

_____


TIMOTHY P. CANNON, J., concurring.


{¶33} I concur with the judgment and analysis of the lead opinion. I write separately because I also agree with the analysis employed by the trial court in this

13

matter; I therefore concur with the decision to affirm the trial court's judgment for additional, not different, reasons. If the statute was meant to obligate recording, it should have directed who was obligated to record and the consequences for failing to do so.

{¶34} I also find it necessary to note that the dissent's criticism of the lead opinion regarding the word "shall" appears misplaced. Nowhere in the lead opinion is there a statement or inference indicating an intention to embrace anything other than "mandatory" as the appropriate definition of "shall." The disagreement here, aptly stated, is regarding what actions the word "shall" was intended to apply—not regarding the definition of "shall."

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶35} I respectfully dissent from the majority's analysis and affirmance of the lower court's dismissal of the appellants' complaint, which seeks to recoup the losses they have experienced, and remedy the confusion that has been caused from MERS' failure to properly record assignments of mortgages. Since a thorough examination of the pertinent statutory language reveals that recordation is mandatory, the trial court's decision should be reversed.

{¶36} To determine the proper outcome, it is critical to correctly apply and understand the legislature's use of the term "shall." In both R.C. 5301.25 and 5301.32,

14

the legislature stated that pertinent documentation, including mortgages and assignments "**shall be recorded**" in the office of the county recorder. (Emphasis added.) The meaning of the word "shall" is well-settled law. The Ohio Supreme Court has repeatedly held that "shall" is to be "interpreted to make *mandatory* the provision in which it is contained, absent a clear and unequivocal intent that it receive a construction other than its ordinary meaning." (Emphasis added.) *State v. Palmer,* 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 19, quoting *Lakewood v. Papadelis,* 32 Ohio St.3d 1, 3-4, 511 N.E.2d 1138 (1987); *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 16. Further, "shall" is commonly defined as "has a duty to" or "is required to." *Black's Law Dictionary* 1407 (8th Ed.2004). The definition's notes explain that "[t]his is the mandatory sense that drafters typically intend."

{¶37} This is not one of those few cases where "shall" addresses conduct that is anything other than mandatory, since the legislature has not indicated that to be the case. No language was included to mitigate the mandatory effect of the word "shall." We need look no further than the statutes' plain language, since, "[i]f the statute conveys a clear, unequivocal, and definite meaning, interpretation comes to an end." *Cincinnati Community Kollel v. Testa*, 135 Ohio St.3d 219, 2013-Ohio-396, 985 N.E.2d 1236, ¶ 25.

{¶38} Looking at the statutes in their proper context, the legislature used the word "shall" immediately prior to the term "be recorded." This leads to the conclusion that the language means exactly what it states: pertinent documents must be recorded in all situations. Such a reading is supported by further reference to the statutes.

15

**{¶39}** First, the general wording of the statutes shows the legislative intent for all mortgages to be recorded. While the majority argues that these words merely *allow* recording but mandate where such recording should take place, this result could and would have been achieved through the use of entirely different language. For example, the statute could have simply read "may be recorded." Or, the statute could have stated "if a party wishes to record a mortgage, such recording shall take place at the county recorder's office" or that recording "shall only be perfected by filing in the county recorder's office in the county where the property is located." This would convey an entirely different meaning than that a mortgage or assignment "shall be recorded."

**{¶40}** Additional wording within R.C. 5301.25 provides further context. Immediately after the provision requiring that the pertinent document "shall be recorded," the statute states the following: "**Until** so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument." (Emphasis added.) Use of the word "until" in this context indicates that the action of recording should take place at some time. *See Webster's II New College Dictionary* 1239 (3d Ed.2005) ("until" is defined as "[u]p to the time of"). If the word "shall" did not mandate recordation, the second sentence would more likely read "if the deed is not recorded," the applicable penalties will apply. Again, there were many ways the legislature could have worded the statute if it intended to make recording optional or discretionary, yet the legislature did not do so.

**{¶41}** Finally, subsection (C) of R.C. 2301.25, states that "tax certificates * * * may be recorded in the office of the county recorder of the county in which the premises

16

are situated." Under the majority's interpretation of the law, both "may" and "shall" would have the exact same meaning within the same section of the Revised Code. Presumably, since the legislature used two separate terms (shall and may), the legislature recognized that they must have different meanings. *Compare Day v. James Marine, Inc.*, 518 F.3d 411, 416 (6th Cir.2008) ("If words are known by the surrounding 'company they keep,' *Logan v. United States,* 552 U.S. 23, 128 S.Ct. 475, 482, 169 L.Ed.2d 432 (2007), they are surely known by how they are used in the surrounding sections of the same statute * * *.").

**{¶42}** The majority's interpretation essentially holds that "shall" does not really mean "shall," but rather means "may." This "Alice through the Looking Glass" interpretation of the English language will cause confusion when considering the many statutes that use the term "shall." The interpretation advanced herein respects the English language, avoids confusion, and is consistent with the practical application of the recording statutes. As the appellants, who are in the best position to see the consequences from a lack of recording, have emphasized, the interpretation advanced by the majority and the appellees creates disorder for governmental entities attempting to make sense of property records—from the treasurers, to the sheriffs, to the records offices. This extends to the public, which has a right to be aware of property records.

**{¶43}** *Pinney v. Merchants' Natl. Bank of Defiance*, 71 Ohio St. 173, 72 N.E. 884 (1904), reinforces these concerns. *Pinney* explained that the recording acts "rest upon a recognition of the policy that there shall somewhere be found a record which will disclose the state of the title of all lands within the county" and that "[t]he business public, therefore, has a high interest in the maintenance of such a system as will enable

every person, by the ordinary inquiry—that is, an examination of the records—to ascertain the condition of titles." (Citation omitted.) *Id.* at 182. This is consistent with the mandate that mortgages "shall be recorded."

{¶44} Further, while this specific issue has not been ruled upon in Ohio, a "requirement" to record has been referenced in several courts. *Mid Am. Natl. Bank & Trust Co. v. Comte/Rogers Dev. Corp.*, 6th Dist. Lucas No. L-95-329, 1996 WL 549249, 2 (Sept. 30, 1996) (R.C. 5301.32 "requires that the instrument be recorded"); *Greene v. Katz*, 8th Dist. Cuyahoga Nos. 37639, et al., 1978 WL 218135, 3 (Oct. 12, 1978) (R.C. 5301.25 "requires the recording of leases"); *see also Cleveland v. Ibrahim*, N.D.Ohio No. 1:01 CV 1582, 2003 WL 24010953, 1, fn. 3 (May 29, 2003) (noting that the pertinent statutes require "recordation"). While the majority cites cases from other states that have ruled to the contrary, those are not binding precedent that must or should be followed by this court.

{¶45} As is demonstrated above, the pertinent statutes must be applied to require recording, since they do not "contain a clear and unequivocal intent that 'shall' * * * means anything other than 'must.'" *Risner*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, at ¶ 16. An examination of the complete statutory language only serves to bolster this conclusion. The impact that the failure to record has on the counties and public as a whole further affirms the propriety of the legislative use of the word "shall" and why the legislature's mandate must be enforced.

{¶46} The concurring judge mischaracterizes the foregoing as criticizing the majority's understanding of the word "shall." As is plainly indicated throughout this opinion, the problem with the majority's decision is the majority's failure to give the plain

18

meaning to the word "shall" ascribed to it by the English language and instead redefining the word. This results in the reinterpretation of the plain language used by the Legislature and the incorrect application of the law in this case.

{¶47} For these reasons, the trial court's judgment should be reversed.